STATE EX REL. COAD, RELATOR, v. JUDGE OF THE NINTH JUDICIAL DISTRICT COURT, RESPONDENT.

[No. 1,406.]

[Submitted June 26, 1899.  Decided July 24, 1899.]

*Mandamus—Disobedience to the Command of the Writ— Contempt.*

1. Where a court has jurisdiction of an application for *mandamus*, and authority to determine all questions presented by the application, the fact that it granted the relator more comprehensive relief than was warranted by the application is not a defense in contempt proceedings for failure to obey the mandate,—at least, so far as it related to matters contemplated by the application.
2. Section 230 of the Penal Code refers to mutilating, defacing, or altering books, maps, and other documents which are matters of evidence, and has no reference to the making of a correct index of the contents of any books in a public office.
3. It is the duty of one to obey a writ of mandate, at all hazards, until the judgment awarding it can be reviewed and annulled on appeal.

*Certiorari*, on the relation of B. S. Coad, to review a judgment of the judge of the Ninth Judicial district adjudging relator guilty of contempt.  Affirmed.

*Messrs. Sanders & Sanders*, and *Mr. E. H. Goodman*, for Petitioner.

*Mr. J. E. Kanouse*, and *Mr. E. A. Carleton*, for Defendant.

**PER CURIAM.**—Original application for a writ of *certiorari* to annul a judgment imposing a fine and costs upon the relator for failure to obey a peremptory writ of *mandamus*, and directing his imprisonment until he should obey the writ. The writ of *mandamus* was issued in the case of *State ex rel. Lambert* v. *Coad*, 23 Mont. 131, 57 Pac. 1092. In the statement preceding the opinion in that case will be found a history of the proceedings down to the entering of the judgment on March 13, 1899. The judgment therein directed the peremptory writ to issue, commanding B. S. Coad, the relator, as clerk of Broadwater county, to "allow the relator herein,

George Lambert, and G. R. McDonald to have access at all reasonable hours to the public records of said Broadwater county, for the purpose of indexing the same.'' From the proceedings certified to us herein it appears that the writ was issued in accordance with this judgment, and thereafter, upon April 21, served upon B. S. Coad by the sheriff of Broadwater county. Lambert thereupon proceeded to the office of Coad, and demanded of him access to the public records of the county, such as would be necessary to enable him to proceed with the indexing of the transcribed records pursuant to his contract entered into with the board of commissioners on January 11, 1899. This right of access to the records was permitted by Coad, but the right to make entries in the index books, theretofore bought by the board and used for the purpose of indexing the transcribed records, was refused. Lambert was informed by Coad that he could do all the indexing he desired to do, but that he must not make any entry nor do any writing in any of the books belonging to the office. On April 26th these facts were made to appear to the Honorable F. K. Armstrong, judge of that district, by the affidavit of Lambert. This affidavit sets forth particularly the history of the proceedings which resulted in the judgment directing the peremptory writ of mandate to issue, and the action of Coad under the mandate of the writ. Thereupon an order was made by the said judge requiring Coad to appear before him at Bozeman, Gallatin county, on May 3d, and to show cause why he should not be punished for disobeying the writ. Coad at the hearing filed his affidavit, setting forth that he had complied with the command of the writ in other respects, but that he had refused Lambert permission to write or make entries in any of the index books in his custody and control as the clerk of the county, as in the faithful performance of his duty as such officer he was bound to do. Coad was thereupon found guilty of willful disobedience to the command of the writ, and sentenced to pay a fine of $5, with costs of the proceeding, and committed to the county jail of Broadwater county until he should obey the writ. By reference to *State*

*ex rel. Lambert* v. *Coad, ante* p. 131, it will be observed that the original application for the writ of *mandamus* was by Lambert in his own behalf. The extent of the relief sought by him was access to the public records of Broadwater county for the purpose of indexing that portion of the transcribed records still remaining to be done. The relief granted by the writ was beyond that contemplated by the application in two particulars, viz: In commanding Coad, as clerk, to allow McDonald, as well as Lambert, access to the records, and in commanding him to allow McDonald and Lambert to index these records generally; not expressly limiting them to the exercise of their rights under their contract to index the transcribed records not yet indexed. No complaint is made that the judgment was in excess of jurisdiction because it included McDonald as well as Lambert. This feature of the judgment is not mentioned in the affidavit, nor do counsel refer to it.

The contention made by counsel for relator is that the district judge so far exceeded his jurisdiction in granting Lambert the right to index the records generally, without expressly limiting his rights to the indexing of the transcribed records as contemplated by the terms of his contract, that the judgment is void. Counsel also insist that the district judge directed the relator to permit Lambert and McDonald to do what it is unlawful for him to permit any one to do in his office; that is, to take charge of the records of his office, with liberty to do the indexing generally. This, it is insisted, was to command relator, not only to violate his oath of office, but also to do what would render him liable to prosecution for a felony, under Section 230 of the Penal Code, which forbids a public officer to mutilate, deface, or alter any public record in his custody, or to permit another to do so. On these two grounds it is claimed that the judgment finding the relator guilty of contempt should be annulled.

The district judge had jurisdiction to try and determine all questions presented by the application for the writ of *mandamus*. It cannot be denied that if the board of commission-

ers had obeyed the law, and let the contract for indexing the transcribed records to the lowest bidder, the writ of mandate would have been properly issued. Whether they did so comply with the law, and make a valid contract, or whether the contract made was valid in the absence of a compliance with the provisions of the statute, were questions within the jurisdiction of the district judge. The defendant was properly before him under the direction of the alternative writ. The judge had power to decide the questions involved, wrong as well as right. (*State ex rel. Buck* v. *Board of Commissioners of Ravalli County*, 21 Mont. 469, 54 Pac. 939.) The fact that he did decide that there was a contract when there was none, as is held in *State ex rel. Lambert* v. *Coad, supra,* was error on his part, but not want of jurisdiction. The district judge therefore had jurisdiction to pronounce the judgment in that proceeding, and award the writ.

Was the district judge's action void because in pronouncing judgment he made it more comprehensive in the particulars mentioned than the application justified? The language of the command of the writ is, "To allow the relator herein, George Lambert, and G. R. McDonald, to have access at all reasonable hours to the public records of said Broadwater county for the purpose of indexing the same." In so far as McDonald is concerned, the judgment is void. He is not in position to claim any rights under it. He occupies the position of a stranger to the record, being neither relator nor defendant. (Freeman on Judgments, Sec. 120.) But it does not follow that the judgment was void because it is more comprehensive in other respects than the application warranted. "If the court has jurisdiction of the action and the parties, and is competent to give part of the relief granted, its judgment, so far as within its powers, is valid." (*Id.; Koepke* v. *Dyer*, 80 Mich. 311, 45 N. W. 143; *ex parte* Rowland, 104 U. S. 604.) There is no question but that the judgment of the district court should have stated particularly the act required of the clerk of Broadwater county, but the relief granted clearly included what it was intended to command

him to do, and the record here discloses that both he and Lambert clearly understood what was required. The affidavit of Lambert filed in the contempt proceeding, and the answer of Coad to the citation, clearly show that the controversy was as to the right of Lambert to use the index books in the office in completing the indexing of the transcribed records, and no others. It was not claimed by Lambert that he had any right to perform any duty appertaining to the clerk, nor that he had any other right than to make entries in the index books bought by the commissioners to be used in the indexing the transcribed records. Coad was not put in such position by the judgment that he would have committed any crime in permitting Lambert to enjoy all the rights he claimed under it. Coad does not dispute the right of the board to make arrangements to index the transcribed records. He simply disputes the right of the board to hire Lambert to make entries in the index books bought for this express purpose; and this upon the technical ground that, if he should permit Lambert to do so, it would render him liable to prosecution for a crime. The books in controversy, so far as can be judged from the record here, were not a part of the records of the county. It appears that they had never been used for any other purpose than to index the transcribed records that were still incomplete. Under the statute (Sess. Laws 1897, p. 48, Sec. 12), they would become a part of the public records only upon their completion under the contract let by authority of the board. The section of the Penal Code (Section 230) under which Coad claims he would be liable to prosecution for allowing Lambert to make entries in the index books has no application. It refers to mutilating, defacing, or altering books, maps, and other documents which are matters of evidence, and has no reference to the making of a correct index of the contents of any books in the office. And we apprehend that if a stranger should correctly index a paper or record in the proper book, either by permission of the clerk or without it, in either case neither he nor the clerk would be guilty of any crime. The whole proceeding on the

part of the clerk reveals a disposition by subterfuge to avoid obedience to the writ. It would be proper for him to complain of the judgment when an attempt was made to use it to his prejudice in the performance of his official duties—until then, it does not lie in his mouth to complain. It was his duty to obey the writ, at all hazards, until the judgment awarding it could be reviewed and annulled on appeal. (High, Extr. Leg. Rem. Secs. 567, 568; *Kaye* v. *Kean*, 18 B. Mon. 839; *State* v. *Elkinton*, 1 Vroom, 30 N. J. Law 335; Merrill on Mandamus, Sec. 302.) Instead of doing this, he refused to obey it, by interpreting the judgment as too comprehensive, and that, too, in a particular entirely immaterial, so far as he was concerned, while fully understanding that he would suffer no prejudice by obeying it, and while no claim was sought to be enforced under it but such as was lawful. There was no excuse for this conduct on his part, and the district judge was clearly within the proper exercise of his power in punishing his disobedience.

We apprehend that the district judge will not, now that the judgment awarding the writ of *mandamus* has been reversed and annulled, undertake to enforce it by imprisoning the relator; but his action in punishing the relator by the imposition of a fine and costs in the contempt proceeding was proper, and will be affirmed, and the judgment therein may be enforced to the extent of requiring the fine and costs to be paid.

*Affirmed.*