STATE EX REL. DOLIN, APPELLANT, *v.* MAJOR, COUNTY CLERK, RESPONDENT.

(No. 4,609.)

(Submitted May 28, 1920. Decided June 25, 1920.)

[192 Pac. 618.]

*Counties—Claims—County Auditor—County Commissioners— Powers—Statutes.*

Claims Against Counties—Statutes—"Accounts"—Definition.
   1. *Held*, that the word "accounts" in section 2894, authorizing the board of county commissioners to examine, settle and allow "all accounts legally chargeable against the county," must be understood in a broad, generic sense and as including any right to or claim for money due from and payable by the county, and not as limited to claims in the form of accounts only.

Same—Approval by Auditor Necessary.

2. Before claims against a county having an auditor (other than claims for salaries or the amounts of which are fixed by law), whether liquidated or not or incurred for material purchased by the commissioners under contract, can be allowed by the board, they must have the approval of the auditor, otherwise the board is without authority to order them paid.

Same—Disapproval by Auditor—Duty of County Clerk.

3. Where the board of commissioners allows and orders paid a claim against the county which has not indorsed upon it the approval of the auditor, it is the duty of the county clerk to refuse to draw a warrant in payment of it.

Same—Approval by Auditor not Binding Upon Board of Commissioners.

4. The approval of a claim against a county by its auditor is not binding upon the board of commissioners, it being clothed with discretion to determine whether it is or is not a proper charge against the county.

Same—Disapproval by Auditor—Effect.

5. Upon presentation to it of a claim which has been disapproved by the county auditor, the board of commissioners must pass upon it and make an order of disallowance, so that the claimant may appeal to the district court or bring his action against the county, neither of which remedies would be available to him without such action by the board.

Same—Disapproval by Auditor—Powers of District Judge—Constitution.

6. *Semble:* It would seem that the proviso in section 3106, Revised Codes, empowering district judges to order payment of a claim against a county after disapproval by the auditor, is repugnant to section 1 of Article IV of the Constitution in that it undertakes to cast upon district judges a power which pertains exclusively to the executive branch of the government.

Same—County Auditor—Powers.

7. *Held,* that in view of the power granted a county auditor with respect to passing upon claims against the county, which is as much *quasi*-judicial and as extensive as that of the board of commissioners in examining them, the contention that his duty is limited to ascertaining whether claims are in proper form and that the amounts are correct, and that therefore the board is not bound by his disapproval of a claim but may allow and order it paid, is without merit.

*Appeal from District Court of Sheridan County; C. E. Comer, Judge.*

*Mandamus* by the state on the relation of Jos. F. Dolin to compel A. A. Major, Clerk of Sheridan County, to issue a warrant in payment of a claim against said county. From a judgment in favor of defendant, relator appeals. Affirmed.

*Messrs. Babcock & Ellery,* for Appellant, submitted a brief; *Mr. Paul Babcock* argued the cause orally.

The construction of section 3106, Revised Codes, seems primarily to turn on the meaning with which the word "audit" is used in the first sentence of the statute. The word "audit" is frequently restricted to a mere mathematical process to determine whether items of an account are correctly computed and to checking over vouchers attached to an account and determining whether they check out with the various items of the account. In *Travelers' Ins. Co.* v. *Pierce Engine Co.*, 141 Wis. 103, 123 N. W. 643, it was held: "The word 'audit' is sometimes restricted to a mere mathematical process but is generally extended to include investigation, weighing of evidence and deciding whether certain items should or should not be included." It may be conceded that the term "audit" ordinarily implies a hearing, and upon such hearing, a determination or allowance or rejection or other decision according to the nature of the claim. (*Cooke* v. *Board of Commrs. of Custer County*, 13 Okl. 11, 73 Pac. 270.) The term "audit" does not in any sense necessarily carry with it such an extended meaning, but the scope, purpose, intent and wording of the statute will determine whether the term is used in its restricted or extended meaning. (*T. M. Sinclair & Co.* v. *National Surety Co.*, 132 Iowa, 549, 107 N. W. 184.) In *Machias River Co.* v. *Pope,* 35 Me. 19, it was held: "To audit is to examine an account, compare it with vouchers, adjust the same and to state the balance by persons legally authorized for that purpose." (*Ford* v. *Springer Land Co.*, 8 N. M. 37, 41 Pac. 541; *In re Heath's Estate,* 52 N. J. Eq. 807, 33 Atl. 46.) Having in mind the distinction in the meaning of the term "audit" when used in the restricted sense and when used in the extended sense, an examination of section 3106, leads to the conclusion that the legislature used the term in a restricted sense only.

Section 2894, Revised Codes, as amended by Chapter 15, Session Laws of 1919, specifically gives to the county commis-

sioners the extended and final auditing power that the respondent necessarily contends lies in the auditor. The county commissioners are given the power to "examine, settle and allow." When these powers are compared to the powers given to the auditor, the difference clearly appears. The auditor may verify the claim by the vouchers. He may determine the mathematical accuracy of a claim. He may investigate and examine. He may inspect. He may note his approval. But he cannot settle, he cannot allow, he cannot reject and he cannot adjust.

There appears nowhere in the Act creating the office of county auditor any intent on the part of the legislature to take away from the board of county commissioners the power to finally determine, settle, allow either in whole or in part, claims filed against the county, and order their payment. In fact, the very provisions of the Act creating the office of county auditor emphasize the fact that this final auditing power is in the board of county commissioners and not in the auditor. The power to settle and allow a claim against the county is certainly not given to the county auditor nor is it given to the district judge. The power must necessarily be in the board of county commissioners where it is placed by statute and no other officer or tribunal can exercise that power save the board of county commissioners.

Oregon has a statutory provision substantially similar to section 2106, as far as the question in issue in this action is concerned. The supreme court of that state in *Bridges* v. *Multnomah County,* 92 Or. 214, 180 Pac. 505, in construing this provision, and, referring particularly to the power of the board of county commissioners to approve and order payment of a claim which the auditor had disapproved, held: "It is true that the board of county commissioners can reject a claim which the auditor has approved or, on the other hand, the board can approve and order the payment of a claim which the auditor has rejected; and yet notwithstanding the fact that the ultimate authority to pay or to refuse to pay is lodged in

the board of county commissioners, the demand must first be presented to the auditor before it is ripe for the consideration of the board.''

*Mr. J. J. Gunther* and *Mr. Geo. Cudhie,* for Respondent, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

It is clear, then, that it was the intention of the legislature to require all claims against a county, having a county auditor, to be approved by both the board of county commissioners and by the auditor before payment thereof can be made. The fact that the statute requires both approval and disapproval to be indorsed upon the claim, and that only in case of disapproval by the auditor can the judge of the district court order a claim to be paid, leads unerringly to the conclusion that it was the legislative intent that in no case should the county commissioners have the power to override the action of the county auditor in disapproving a claim, and that this authority should be exercised only by the judge. Should the county auditor approve the claim, then the concurrence of the county commissioners in the approval entitles the claimant to receive a warrant for the amount; and the only person who can complain in this event is a taxpayer, or other person whose interests are affected. Should the county auditor approve and the commissioners disapprove a claim, then the remedy is by appeal under the provisions of section 2947, Revised Codes, or perhaps by direct action against the county for the amount claimed. Where, however, the claim is disapproved by the county auditor, the board of commissioners is eliminated and the judge of the district court is the only person authorized to override the action of the auditor, and order the claim paid. Thus the functions of the auditor and of the board of county commissioners are combined in the judge, who has authority to audit the claim (the function of the auditor) and to order it paid (the function of the commissioners). If the commissioners have authority to overrule the auditor in disapproving a claim, then the auditor might become a useless

official; and the proviso authorizing the judge to act will become nugatory. The report of the auditor of the result of his investigation and examination of the claim and of which he is obliged to make a record (sec. 3106) is available to the judge, to enable him to pass upon the claim.

Appellant in his brief says: "Under the provisions of sentence 4 of section 3106, construed literally, the district judge might order a claim paid which has been disallowed by the county commissioners." Appellant is in error in this assumption. The only authority given the district judge is to order payment of a claim which has been disapproved by the county auditor. With a claim disallowed by the county commissioners he has nothing to do. The remedy in such case is by appeal or by direct action. (See *Board of County Commrs.* v. *Cypert* (Okl.), 166 Pac. 195–197. See, also, *Torres* v. *Board of Commrs.*, 23 N. M. 700, 171 Pac. 510; *Albers* v. *Barnett*, 53 Mont. 71, 161 Pac. 521–524; Rev. Codes, sec. 6450A.)

It appears that in creating the office of county auditor the legislature intended to vest in the officer executive powers, rather than mere clerical or ministerial duties. The whole chapter read together leads irresistibly to the conclusion that it was the legislative intent that the auditor should exercise executive and administrative authority. With these extensive powers conferred upon him, as well as the duty imposed upon him to investigate and examine, approve or disapprove, all claims against the county, the powers given exceed, perhaps, those of any other county officer; and that these powers were given deliberately and with the intention of creating an office with authority to act as a check upon the commissioners in matters pertaining to the payment of claims against the county is apparent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On November 29, 1919, the relator (plaintiff) presented to B. K. O'Grady, the auditor of Sheridan county, for her ap-

proval, a claim for printing done by relator for the county, properly itemized and verified as provided by the statute. (Rev. Codes, sec. 2945.) On December 2, the auditor approved the claim in part but disapproved it as to the remainder, and reported it to the board of county commissioners with the indorsement of her action thereon. At its regular session on January 6, 1920, after considering the claim, the board disregarded the action of the auditor disapproving a portion of it, settled and allowed it in full, and ordered the defendant (respondent), the county clerk, to draw a warrant for the amount of it in favor of the relator. The defendant refused to comply with the order, though the relator made demand upon him. Thereupon the relator applied to the district court for a writ of *mandamus* to compel him to issue the warrant. In response to the alternative writ, he filed his answer in which he denied the power of the court to order him to issue the warrant. Relator's general demurrer to the answer having been overruled, he elected to submit the application for final decision upon a question of law raised by the answer. The court rendered judgment for the defendant setting aside the alternative writ and dismissing the application. The relator has appealed. The question presented for decision is whether the board of commissioners may settle and allow a claim against the county and order the issuance of a warrant for its payment, though it has been disapproved by the county auditor. In other words, Is it within the authority of the board of commissioners under the statute defining its power and jurisdiction in that behalf to settle and allow a claim against the county, notwithstanding the auditor has disapproved it?

A claim, as the one in question here, may be disapproved only in part. The part disapproved, however, is still *pro tanto* a claim outstanding against the county, the validity of which remains to be determined at the option of the claimant by such proceeding as may be available to him for that purpose; for, however extensive the power possessed by the audi-

tor, it cannot be assumed that his disapproval of a claim is finally conclusive against the claimant.

The general powers of the board of county commissioners with reference to claims against the county are defined in section 2894 of the Revised Codes, as follows: "The board of county commissioners has jurisdiction and power under such limitations and restrictions as are prescribed by law, * * * at regular meetings of the board to examine, settle and allow all accounts legally chargeable against the county, except salaries of officers, and order warrants to be drawn on the county treasurer therefor, and provide for the issuing of the same." The duties of the county clerk in this respect are defined as follows: "The county clerk must: * * * Draw warrants on the county treasurer in favor of all persons entitled thereto in payment of all claims and demands chargeable against the county, which have been legally examined, allowed and ordered paid by the board of county commissioners; also for all debts and demands against the county when the amounts are fixed by law, which are not directed to be audited by some person or tribunal." (Sec. 3045.)

Sections 3100 to 3110, inclusive, create the office of county auditor, for all counties having an assessment of not less than $8,000,000 and prescribe the duties of this officer. Section 3106 declares: "It shall be the duty of persons holding claims against any county having a county auditor to present the same to the county auditor, whose duty it shall be to audit the same. The county treasurer shall also investigate and examine into all claims presented to him and report the same with his findings to the board of county commissioners at their [its] regular session after such investigation shall have been completed with his approval or disapproval endorsed thereon and he shall keep a complete record of all such claims and of his investigations and examinations of the same in a book kept for that purpose. In all counties having a county auditor, all bills, claims, accounts or charges for materials of any kind or nature that may be purchased by and on behalf of the

county by any of the county officers or contracted for by the county commissioners, shall be investigated, examined and inspected by the county auditor who shall endorse his approval or disapproval thereon before any warrant for the payment of the same can be drawn. In all counties having a county auditor, no claim against the county shall be paid or warrant drawn therefor unless the same shall have the approval of the county auditor; provided, however, that the judge of the District Court of the county where any claim has been disapproved by the county auditor may order the payment of the same."

It will be noticed that under section 2894 the power of the [1, 2] board to settle and allow claims against the county seems to be limited to those in the form of accounts only; but, speaking generally, since the board has the exclusive power to act for the county and to control the disbursement of its funds, the word "accounts" used therein must be understood in a broad, generic sense, and as including any right to or claim for money which is due and payable from the county treasury; for whether a claim, other than one of those expressly excepted, be technically in the form of an account or not, the board must recognize it as a legal claim before it can make an allowance of the amount of it and order its payment. Otherwise, the clerk may not draw a warrant on the treasurer in any case not directly authorized by section 3045. As to the excepted claims, namely, salaries and debts and demands, the amounts of which are fixed by law, no allowance is necessary, because jurisdiction over them is not vested in the board, and it is the clerk's legal duty to draw warrants for their respective amounts. That the word "accounts" is employed in this sense is apparent from the terms used in defining and limiting the clerk's authority in the latter section. This conclusion is made necessary, too, by section 3106, in that it requires all claims to be presented to the county auditor, and that this officer shall "investigate and examine into all claims presented

to him" and report them to the board at its regular meeting thereafter "with his approval or disapproval endorsed thereon." In terms the first two sentences of the latter section require action by the auditor before a claim may be presented to the board at all. Therefore, this section is one of the limitations or restrictions upon the general power and jurisdiction of the board mentioned in section 2894. To put this beyond contro-[3] versy, the last sentence in the section expressly prohibits the drawing of any warrant in payment of any claim unless it "shall have been approved by the county auditor." This prohibition, of course, does not include salaries of officers or demands, the amounts of which are fixed by law. For these the clerk is directed to draw warrants without an order or allowance by the board. It does include, however, all other claims against the county, whether they may be classified as liquidated or unliquidated claims. As to a claim of this character the approval of the auditor is made a condition precedent to its allowance by the board or the drawing of a warrant in payment of it by the clerk. Unless this condition is complied with, the board is without power to act upon it at all, and if it presumes to allow it and to order it paid, the clerk has no authority to draw a warrant for the amount of it. On the contrary, it is his duty to refuse to obey the order, for he is required to obey the order of the board only when a claim has been "legally examined, allowed and ordered paid" by it. When it does bear indorsement by the auditor of his disapproval, the clerk is thus notified that he is forbidden by section 3106 to draw the warrant. In view of the language employed in the first two sentences of this section, it seems that specific reference in the third sentence to charges for material purchased by or on behalf of the county by any county officer or contracted for by the county commissioners is wholly unnecessary; for taking these together, as we have said above, they make it clear that the legislature intended that all claims shall be presented and be approved or disapproved by the auditor before they are subject to the juris-

diction of the board for any purpose. These two sentences clearly evince this intention, but the prohibition, contained in the last sentence removes all doubt in this regard. Doubtless, by specific reference to this class of claims the legislature intended to put them by express terms in the same category as other claims and thus to leave no ground for the holder of such a claim, or for the board itself, to believe that it is not subject to investigation and approval or disapproval by the auditor, because it has been contracted by the board or any county officer. It is obvious, also, we think, that by requiring the auditor to report the claims to the board with his approval or disapproval, the intention was to leave the board free to exercise its judgment and discretion in allowing and ordering paid the approved claims; for no restriction is declared as to the power of the board in this respect. It is obvious, too, we think that the only power left to the board with reference to claims disapproved is to disallow them. That it is incumbent upon it to do so is made apparent by these considerations.

As to claims approved by the auditor the board may allow [4] or disallow them at its discretion. It is entirely within its province to finally determine whether any claim, though approved by the auditor, is a proper charge against the county; for there is nothing in section 3106 suggestive of the idea that the approval by the auditor has the effect of an allowance or that it is binding upon the board. The board is left free to exercise its judgment under section 2894. It is bound, however, by the disapproval of the auditor, for "no claim * * * shall be paid or warrant drawn therefor un-[5] less the same shall have the approval of the county auditor." It is, nevertheless, not excused from passing upon a claim which has been disapproved by the auditor, for the requirement that he shall report such a claim to the board with his disapproval indorsed thereon must have some purpose. Otherwise, his report of a claim disapproved by him would be an idle act. It is a fair inference that the board shall make an order disallowing it so that the claimant may, at his option,

proceed to enforce it against the county by means of an appeal to the district court (Rev. Codes, sec. 2947), or by bringing his action directly against the county. (Rev. Codes, sec. 6450a; *Greeley* v. *Cascade County,* 22 Mont. 580, 57 Pac. 274.) Neither one of these remedies would be available to him without a presentation to and an order of disallowance by the board (Rev. Codes, secs. 2945, 2947; *First Nat. Bank* v. *Commissioners of Custer County,* 7 Mont. 464, 17 Pac. 551; *Powder River Cattle Co.* v. *Commissioners of Custer County,* 9 Mont. 145, 22 Pac. 383), and it may not be presumed that the legislature intended by the creation of the office of auditor to restrict in any way the right of the claimant to avail himself of these remedies to enforce his claim, or to repeal or modify them in any respect.

It is true that the proviso in the last sentence gives the [6] judge of the district court of the county the power to order the payment of a claim which has been disapproved by the auditor. Conceding, for the moment, that the legislature could lawfully impose upon the district judge the duty to consider in a summary way any claim against the county, the expression, "may order the same paid," employed in the proviso, cannot mean more than that the judge may revise and overrule the action of the auditor and approve the claim; for it cannot be supposed that the legislature intended to constitute the judge the final arbiter between the county and the claimant, and thus take away from the county the right to have the validity of any claim against it judicially determined in the ordinary way. The county, as well as the claimant, has a right to its day in court and to have a controversy over a disputed claim tried by a jury. This right the legislature cannot take away. Besides this, we are inclined to the opinion that the proviso is open to the objection that by it the legislature undertook to cast upon the judge the duty to exercise a power which pertains exclusively to the executive branch of the government and thus that it is repugnant to section 1 of Article IV of the Constitution. These remarks are merely

suggestive, however. It is not our purpose to express other than a tentative opinion as to the validity of the proviso, for no question in this behalf arises in this case.

Counsel contend that the word "audit" is used in this section in its narrow and restricted sense and that, when we so consider it, together with the language employed in section [7] 2894, it is apparent that the office of auditor was created solely for the purpose of relieving the board from the duty of inspecting accounts and determining whether they are in proper form and the amounts of them are mathematically correct. They insist that since this is so, the board may over-rule the decision of the auditor in disapproving a claim, allow it and order it paid. This position cannot be maintained. It is apparent from section 3104, taken together with the requirement in section 3106, that the auditor must investigate and examine all claims, that his power is *quasi*-judicial in character, just as is that of the board when it proceeds to examine and allow or disallow the claims reported to it. He is authorized by section 3104 to compel the attendance of witnésses, to administer oaths, and to examine into any matter which he deems necessary. This power is wholly inconsistent with the idea that he is limited to the mere duty of ascertaining whether the claim is in proper form and that the amount of it is correct. It is obvious, too, that the legislature, in vesting the auditor with this character of power, created the office in order to relieve the boards of commissioners in counties having an assessment of $8,000,000 or over, of a part of their duties, namely, that of investigation necessary to ascertain the propriety and validity of the numerous claims which are necessarily presented from time to time. It proceeded upon the theory that in the more wealthy and prosperous counties the amount of business coming before the boards would be larger in volume, and that they would have less time to devote to the examination and investigation of these claims. It had the power to do this if it chose, as well as to omit to provide for such assistance to boards in the less wealthy and populous

counties in which the demands upon their attention would necessarily be not so great.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY, MATTHEWS and COOPER concur.