STATE EX REL. LOCKWOOD ET AL., RELATORS, *v.* TYLER
ET AL., RESPONDENTS.

(No. 5,115.)

(Submitted May 29, 1922.   Decided July 3, 1922.)

[208 Pac. 1081.]

*Mandamus—County Warrants—Issuance—County Clerk—Min-
isterial    Officers—Powers—Constitutionality    of    Statutes—
Right    to    Question—Curative    Statutes—Applicability.*

*Mandamus*—When Supreme Court will Take Original Jurisdiction.
   1.   Where the facts set out in the petition for a writ of *mandamus*
   constitute more than a mere controversy between private litigants
   and present questions *publici juris*, the supreme court will assume
   original jurisdiction.

Same—County Treasurer—Registration of Warrants—When Writ Docs
   not Lie.
   2.   Where the petition for writ of mandate to compel a county
   treasurer to register warrants shows on its face that the warrants
   were not properly made out, signed or executed, it does not state
   facts sufficient to justify the granting of the writ, since such a
   warrant is no warrant at all, and upon its presentation the officer
   may entirely disregard it.

County Clerks—Right to Question Legality of—Claims Against County.
   3.   The duty of the county clerk to issue warrants for claims
   passed upon by the board of county commissioners, being minis-
   terial only, he is not clothed with supervisory power to either
   question or determine the legality of the claims, except where
   they are void upon their face as without the jurisdiction of the
   board to pass upon.

*Mandamus*—After Compliance With Writ, Appeal Does not Lie.
   4.   Where a board of county commissioners acts in obedience to a
   writ of mandate it cannot thereafter appeal from the judgment
   awarding the writ.

County Clerks—May not Question Constitutionality of Statute.
   5.   A ministerial officer, such as a county clerk, to whom no in-
   jury can result and to whom no violation of duty can be imputed
   by reason of his compliance with a statute cannot refuse to per-
   form a duty imposed by it on the ground of its unconstitutionality,
   since such an officer is not liable for his official acts when acting

----

   1.   Original jurisdiction of state court of last resort to issue writ,
see note in 20 Ann. Cas. 184.
   5.   Right of relator in *mandamus* proceedings to attack constitu-
tionality of statute relied upon by respondent, see note in 16 L. R. A.
(n. s.) 266.
   Unconstitutionality of statute as defense against *mandamus* to com-
pel its enforcement, see notes in 47 L. R. A. 512; 24 L. R. A. (n. s.)
1260; 34 L. R. A. (n. s.) 1060.

under process, warrants or other instruments, fair upon their face and issued from a superior tribunal or board.

Curative Statutes—Effect.

6. Under a curative statute designed to validate claims against a county for services rendered in the classification of its lands for assessment purposes and to pay which it was morally bound, payment whereof had been enjoined because of a constitutional defect in the prior Act, the county clerk could not justify his refusal, in a *mandamus* proceeding, to issue warrants for their payment on the ground that by doing so he would disobey the injunction order, the binding force upon the parties (or the public) of the decision holding the prior Act unconstitutional and void having been destroyed by the enactment of the validating statute.

Same—Applicable, When.

7. A curative statute of the nature of Chapter 239, Laws of 1921, which is intended to be retroactive and does not impair the obligation of contract, but the purpose of which is to enable a county to pay just claims which it could not pay because of a constitutional defect in the Act under which incurred, applies even though it was passed after the claims had been presented to the board of county commissioners for approval or rejection.

County Warrants—Issuance Comprehends What.

8. The issuance of county warrants ordered by writ of mandate imposes upon the county clerk not only the duty to draw, sign and certify them but that of their delivery to the claimants as well.

Original application by the State of Montana on the relation of L. V. Lockwood and another against R. G. Tyler, as member and the chairman of the county commissioners of Sheridan County, Montana, and others for a writ of *mandamus*. Writ granted as to defendants R. G. Tyler and B. K. O'Grady, county clerk and recorder of Sheridan County, and denied as to D. J. Olson, county treasurer.

*Messrs. Hurly, Kline & Slattery* and *Mr. Howard M. Lewis* for Relators, submitted an original and a supplemental brief; *Mr. John Hurly* and *Mr. Lewis* argued the cause orally.

*Messrs. Wheeler & Baldwin, Mr. Arthur C. Erickson* and *Mr. Alfred T. Vollum,* for Respondents, submitted a brief; *Mr. James H. Baldwin* argued the cause orally.

MR. JUSTICE FARR delivered the opinion of the court.

Original application for a writ of *mandamus* based upon a petition alleging substantially as follows: That the relators, Lockwood and Blakeslee, as copartners, entered into a contract

with Sheridan county for the classification of certain lands in
that county under the provisions of Chapter 89, Session Laws
of 1919, sixteenth legislative assembly.  During the perform-
ance of the work, an injunction suit was brought by one Clair
Stoner for the purpose of testing the validity of the contract
and the legislative Act under the authority of which it was
made.  The district court, after a hearing, denied the applica-
tion for an injunction, whereupon the plaintiff Stoner appealed,
and this court held the Act unconstitutional.  (*Stoner* v.
*Timmons*, 59 Mont. 158, 196 Pac. 519.)  After the filing of
the *remittitur* in the district court, that court granted a per-
petual injunction, restraining the county officials of Sheridan
county from carrying out the provisions and terms of the ,
contract, which judgment was based upon the opinion of this
court, no new hearing upon the facts having been had after
the receipt of the *remittitur*.  After the decision in the *Stoner
Case,* the state legislature passed another Act, providing for
the classification of lands for assessment and taxation purposes,
in which it was provided, among other things, that " * * *
The board of county commissioners of any county which had
heretofore procured the performance of any work or labor or
the rendering of any services in the classification of land in
the county for taxation or assessment purposes, or incurred
any expenses pursuant to the provisions of Chapter 89 of the
laws of the sixteenth legislative assembly, and have not com-
pensated the person or persons for such work, labor or ser-
vices, or paid such expenses incurred, are hereby authorized
and empowered, and it is hereby made the legal duty of such
board, to pay such person or persons for such work, labor or
services, and such expenses incurred out of the classification
fund of said county.  Any and all contracts heretofore entered
into by the boards of county commissioners of the various
counties for the classification of lands under Chapter 89 of the
laws of the sixteenth session of the legislative assembly of
Montana, are hereby declared to be validated and in full force
and effect, and it is hereby made the duty of the various

boards of county commissioners where contracts for said classification are partially performed to complete the same according to the terms of said contracts; provided, however, that the said boards of county commissioners may make such supplemental contracts as they deem necessary for the purpose of carrying out the terms of this Act.  *  *  *  '' (Sec. 4, Chap. 239, Sess. Laws 1921.)

While the *Stoner Case* was pending on appeal, and before the decision of this court thereon, the petitioners Lockwood and Blakeslee, on January 3, 1921, filed with the board of county commissioners of Sheridan county seven claims or bills, aggregating $7,113.91, the same constituting a balance claimed to be due upon the contract. After these claims were presented, the board took no action thereon, whereupon, on January 15, 1921, the relator Lockwood commenced an action in the district court of Sheridan county for a writ of *mandamus*, pursuant to which an alternative writ was issued, directed to the members of the board of county commissioners as such board, B. K. O'Grady, clerk and recorder, and D. J. Olson, substituted for Rex M. Movius, his predecessor in office, as county treasurer, commanding them to do and perform certain acts in connection with the allowance of the claims of Lockwood and Blakeslee, the relators herein, against the county for the classification of lands for taxation and assessment purposes. Thereafter such proceedings were had in the action that on January 22, 1921, the district court made and entered its judgment that a peremptory writ of mandate issue against the members of the board of county commissioners directing the performance of the acts above mentioned. Thereafter the commissioners appealed from that judgment to this court, which appeal was thereafter dismissed. While the case was pending in this court on appeal, the members of the board of county commissioners appeared before the district court, stating that they had abandoned the appeal, and asked that the district court issue a writ of mandate, and pursuant thereto the court made an order, amending its judgment of January

22, and required the board to meet on May 27 and settle and allow the said claims and order warrants to be drawn on the classification fund in payment thereof, and issued a peremptory writ in accordance with the terms of the judgment as amended. The board convened pursuant to the writ, and, as commanded, settled and allowed the claims of the relators, Lockwood and Blakeslee, and ordered warrants in payment thereof to be drawn.

That thereupon it became the duty of the respondent O'Grady, as county clerk, to draw warrants of Sheridan county on the classification fund thereof to the order of relators, and the duty of respondent Tyler to sign and execute the warrants, as chairman of the board, and the duty of the respondent O'Grady, as county clerk, to sign and execute the said warrants, and the duty of Tyler and O'Grady to deliver the warrants to relators; that neither Tyler nor O'Grady has signed, executed or delivered any warrant to the relators, or either of them, on account of said claims, or any of them, and that Tyler and O'Grady refuse to sign, execute or deliver any warrant or warrants to relators, or either of them, for the allowed claims, or any of them; that the said Tyler and O'Grady did sign certain pretended warrants, but did not fill in any amount in any of the pretended warrants, and did not attach the seal of Sheridan county to any of them, and that these pretended warrants Tyler and O'Grady delivered to the respondent Olson, who ever since has had them and now has them in his possession.

An alternative writ of *mandamus* was issued by this court, commanding the respondent Tyler, as chairman of the board of county commissioners of Sheridan county, and the respondent O'Grady, as county clerk of said county, to make, execute and deliver to relators a warrant of Sheridan county on the classification fund thereof for each claim described in the relators' petition, the warrants to be dated as of May 27, 1921, and commanding the respondent Olson, as county treasurer, to register the warrants as of said May 27, 1921, or

that they show cause why they should not do as commanded in the alternative writ.

The respondent Tyler, as chairman of the board of county commissioners, has not appeared, and as to him the allegations of the petition are to be considered as confessed. The respondents O'Grady and Olson have separately appeared by motion to quash, challenging the sufficiency of the relators' petition. O'Grady and Olson have also filed a joint answer, to which the relators have demurred on general grounds. No issue of fact is presented requiring its submission to a referee, as has been suggested by respondents, and the cause can be determined upon the questions of law presented by the pleadings.

The respondents first question the propriety of this court [1] exercising original jurisdiction. The facts set out in the petition constitute more than a mere controversy between private litigants. The subject matter of this controversy has been before this court in two preceding cases. (*Stoner* v. *Timmons, supra; State ex rel. O'Grady* v. *District Court,* 61 Mont. 346, 202 Pac. 575.) In the first case the court held unconstitutional the Land Classification Act, which is the very basis of all this litigation. The state legislature has since enacted a remedial statute. (Chap. 239, Sess. Laws 1921.) The effect of this remedial legislation upon the final judgment rendered by the district court in *Stoner* v. *Timmons,* pursuant to the order of this court, is one of the questions here raised. The petition involves questions *publici juris,* and upon the facts as stated in our opinion the failure to exercise original jurisdiction would amount to a denial of justice.

As to the case sought to be made against the respondent [2] D. J. Olson, as county treasurer: It is the opinion of the court that the petition does not state facts sufficient to justify the granting of the relief sought as to the county treasurer. Until a county warrant in proper form is presented to D. J. Olson, as county treasurer, and he has either refused to pay it, if there is money in the county treasury for that purpose,

or, if there are not sufficient funds in the county treasury, he has refused to register it as "not paid for want of funds," it cannot be said that he has refused to perform any act which the law specifically enjoins upon him as a duty resulting from his office. The basis of relators' cause of action against the chairman of the board of county commissioners and the county clerk is that no warrant in proper form has been issued. A "warrant" not properly made out, signed or executed, as is alleged, is not in fact a warrant at all. Therefore, no warrant having been issued, none could be presented to the county treasurer. Until presentation of a warrant, he is not called upon to do anything. It is the treasurer's duty to "disburse the county moneys only on county warrants issued by the county clerk, based on orders of the board of county commissioners. * * * ." (Subd. 5, sec. 4750, Rev. Codes 1921.) The fact, as alleged, that the county treasurer has some "pretended" warrants in his possession, "pretended" to be issued in relators' favor in payment of the claims involved, is immaterial. If not properly made out, signed or executed, they are not warrants issued by the county clerk, and are to be entirely disregarded as such.

As to the case against B. K. O'Grady, as county clerk: [3] The county clerk seeks to question the legality of the action of the board of county commissioners in the allowance of the claim of the relators, and its order that warrants be issued in payment thereof, for several reasons, among which is the constitutionality of the curative Act of the legislative assembly. (Chap. 239, Sess. Laws 1921.) It is the relators' contention that the county clerk cannot call in question the validity of the Act of the board because in the issuance of warrants pursuant to order of the board she acts ministerially.

The board of county commissioners is given power "to examine, settle, and allow all accounts legally chargeable against the county except salaries of officers, and order war-

rants to be drawn on the county treasurer therefor, and provides for the issuing of the same.'' (Subd. 12, sec. 4465, Rev. Codes 1921.) The relators' claims come within the meaning of the word ''account'' as used in this statute. (*State ex rel. Dolin* v. *Major,* 58 Mont. 140, 192 Pac. 618.) The county clerk is the clerk of the board of county commissioners. (Sec. 4459, Rev. Codes 1921.) As such she *must* ''sign all orders made and warrants issued by order of the board for the payment of money, and certify the same to the county treasurer.'' (Subd. 4, sec. 4460, Rev. Codes 1921.) It is also made her duty to ''draw warrants on the county treasury in favor of all persons entitled thereto in payment of all claims ·and demands chargeable against the county, which have been legally examined, allowed, and ordered paid by the board of county commissioners. * * * '' (Subd. 3, sec. 4811, Rev. Codes 1921.) Both these provisions of the statute just quoted are to be read and construed together. The power is thus given the board of county commissioners to determine the validity of all claims against the county. When they have settled and allowed a claim, and have ordered a warrant to be drawn on the county treasury therefor, and provided for the issuance of the same in accordance with their determination, the county clerk *must* then draw a warrant on the county treasury, sign and certify to it in payment of the claim. She acts in this connection in a ministerial capacity. No discretion is lodged in her. Her authority is the command of the statute, and it is the limit of her power. (*In re Farrell,* 36 Mont. 254, 92 Pac. 785; *Estus* v. *State* (Okl. Supp.), 200 Pac. 1002.) She is not clothed with supervisory power to either question or to determine the validity of the Acts of the board. (*Beeney* v. *Irwin,* 6 Colo. App. 66, 39 Pac. 900; *Ireland* v. *Hunnel,* 90 Iowa, 98, 57 N. W. 715.)

· If it is desired by any taxpayer to question the legality of the claim, the law provides a method (sec. 4610, Rev. Codes 1921), but certainly the clerk of the board, whose duty it is to draw and sign all the warrants issued by order of the

board for the payment of money and to certify the same to
the county treasurer, should not be permitted to assign as a
reason for not doing so that the claim upon which the war-
rant is to be issued is, in her opinion, for some reason, un-
just or unlawful.

The language of the supreme court of Oklahoma in the
case of *Bodine* v. *McDaniel Auto Co.* (Okl. Supp.), 170 Pac.
899, is peculiarly applicable to the facts in the instant case.
The proceeding there was for a writ of mandate to require
the county clerk to attest a warrant ordered drawn by the
board of county commissioners of a county, in payment of a
claim of the relator against the county which had been ordered
paid by the board. In response to the alternative writ, the
county clerk defended upon the ground that the board had
no authority to make the purchase represented by the allowed
claim, and the court said: ''We cannot see the materiality of
such argument in the present action. No claim can be paid
by the county until the same is duly filed and allowed by
the board of county commissioners. In case of rejection by
the board, the claimant may either appeal to the district
court or institute an independent action in a proper court
on such claim. The authority to pass upon claims against
the county is vested solely in the board of county commis-
sioners. The duties of such board and those of the county
clerk are entirely separate and independent. The county
clerk has no power to approve or disapprove claims against
the county, nor is there any provision for appeal from the
board to such officer. The clerk, in attempting to pass upon
the validity of a claim, usurps the functions of the board of
county commissioners. There is no statute that makes the
clerk in any way the guardian of the people's money or
property, nor is he vested with any supervision in respect
thereto. The statutes provide ample means for relief in cases
of misappropriation of county funds by the board of county
commissioners or unauthorized expenditures of the county's
money. * * * The county clerk has no more authority

to assume the duties of the county commissioners than the county commissioners have to usurp the functions of the office of county clerk. It would be dangerous, indeed, to hold that acts of boards of county commissioners in allowing claims are subject to review by the county clerk or by any other officer not vested with judicial power. In case of partisan or factional differences * * * the progress of the county's fiscal affairs would be blocked. * * * '' This case was followed by the supreme court of Oklahoma in the case of *Estus* v. *State, supra,* where the court denied the county clerk and the county treasurer of one of the counties in that state the right to question the legality of warrants directed to be issued by the board of county commissioners of that county in payment of work in the remodeling and repairing of a jail. To the same effect see *McConoughey* v. *Jackson,* 101 Cal. 265, 40 Am. St. Rep. 53, 35 Pac. 863; *Alameda Co.* v *Evers,* 136 Cal. 132, 68 Pac. 475.

So far as the answer of the respondent O'Grady attempts to question the conclusion or finding of the board in settling and allowing relators' claims, it cannot be considered. So far as she is concerned, such questions as, for example, whether the contract was entered into, whether the work was fully performed, whether the claims were duly presented or duly allowed, are *res adjudicata;* the board of county commissioners, the *quasi*-judicial board of the county so far as the passing on claims against the county are concerned—the body to whose determination such matters are submitted by statute —having made a determination thereof.

Respondent relies upon the case of *State ex rel. Dolin* v. *Major,* 58 Mont. 140, 192 Pac. 618, as authority for her contention that, if the board of county commissioners direct that the county clerk draw a warrant for any claim which is not properly chargeable against the county or which has not been legally examined, allowed and ordered paid by it, it is not only the right, but it is the duty, of the county clerk to refuse to draw the warrant. The only question presented to or

decided by the court in that case was whether the board of
county commissioners may settle and allow a claim against
a county and order the issuance of a warrant for its pay-
ment, though it has been disapproved by the county auditor.
The court held that the board did not possess such authority,
by reason of the provisions of section 4830, Revised Codes
of 1921, which provides that in all counties having a county
auditor, no claim against the county shall be paid or war-
rant drawn therefor, unless the same shall have the approval
of the county auditor; and it was held that the county clerk is
justified in refusing to issue a warrant where the claim showed
upon its face that the county auditor had not approved it.
There the claim showed upon its face that it had been dis-
allowed by the county auditor, and, because of that fact, by
express statutory inhibition neither the board of county com-
missioners nor the county clerk had any jurisdiction with re-
gard to the payment of the claim. The condition precedent
to its allowance by the board and the drawing of a warrant in
payment of it by the clerk, namely, the approval by the audi-
tor, had not been met.

An examination of the decided cases will disclose that a
well-defined distinction is recognized between those claims
which a board of similar power and jurisdiction to those of
a board of county commissioners may allow and order paid,
which are void upon their face for want of jurisdiction, and
those which, so far as appears from the face of the claims,
are within the jurisdiction of the board. The former class—
those which appear on their face to be without the jurisdic-
tion of the board, as was the condition in the case of *State
ex rel. Dolin* v. *Major, supra,* the ministerial officer whose duty
it is to draw the warrant, can properly refuse; but as to
claims which upon their face appear to have been acted upon
and allowed within the jurisdiction of the board, the minis-
terial officer possesses no such authority.

The supreme court of California, in the case of *McFarland*
v. *McCowen,* 98 Cal. 329, 33 Pac. 113, which appears to be one

of the leading cases in that state on the question, in constru-
ing the language of the statute of that state giving jurisdic-
tion to the board of supervisors (analogous to our board of
county commissioners), *viz.:* ''To examine, settle, and allow
all accounts legally chargeable against the county, except sal-
aries of officers, and other warrants to be drawn on the county
treasurer therefor'' (which is the identical language of sub-
division 12 of section 4465, Revised Codes of 1921), in re-
ferring to a claim for constable fees which had been allowed
by the board and a warrant ordered drawn therefor which the
county auditor refused to draw and *mandamus* proceedings
were instituted, said: ''It is the privilege and duty of the
auditor to refuse to draw his warrants upon the treasurer for
claims which, although sanctioned and ordered paid by the
board of supervisors, are void upon their face for want of
jurisdiction in the board of supervisors, or showing an excess of
jurisdiction, or other plain and palpable violation of law.''
And the court held that there was no such showing, and that
the defense amounted to simply a charge that the board de-
cided the claim wrongfully; and the court further said: ''The
jurisdiction to hear and determine a case involves, from a
jurisdictional standpoint, the abstract right to determine it
wrong as well as right. In other words, the jurisdiction to
determine being given, is not divested by an error of judg-
ment in reaching a result. When the board of supervisors
heard and determined the facts involved in the claim, and
made their order of allowance thereof, it became *res adjudi-
cata,* and, in the absence of fraud, conclusive. (*Colusa County*
v. *De Jernett,* 55 Cal. 375.)   This case has been followed by
the supreme court of that state in *McBride* v. *Newlin,* 129
Cal. 36, 61 Pac. 577; *Thiel Detective Co.* v. *Tuolumne County,*
37 Cal. App. 423, 173 Pac. 1120.

In the case of *State ex rel. Dolin* v. *Major, supra,* the war-
rant appeared on its face to have been acted upon by the
board entirely without jurisdiction. Our statute expressly
provides that in those counties having a county auditor, no

warrant shall be drawn on a claim until "it shall have been approved by the county auditor." (Sec. 4830, Rev. Codes 1121.) There was a want of jurisdiction, both as to the board and as to the county clerk. The case is not in point upon any question involved in the instant case. No question of jurisdiction such as was there presented is here involved. Relator's claims are regular on their face, and, so far as appears therefrom, the board of county commissioners were entirely within their jurisdiction.

In order that there may be no confusion as to the facts of the case of *State ex rel. Dolin* v. *Major, supra,* with the case at bar, it is proper to say that since the occurrences which gave rise to the decision of the court in that case, by reason of the change in the classification of Sheridan county, it did not have a county auditor at the time of the presentation by the relators of the claims involved in this proceeding.

It is also immaterial what prompted or caused the board to allow the claims. The fact that the board convened as such, pursuant to a judgment of the district court, which judgment was by this court, in another proceeding (*State ex rel. O'Grady* v. *District Court, supra*), held invalid, is immaterial. No appeal was taken from the judgment. The board [4] of county commissioners acted in response to the writ of mandate and, having acted pursuant to the command of the writ, the board was without the right of appeal. (*State ex rel. Begeman* v. *Napton,* 10 Mont. 369, 25 Pac. 1045; *State ex rel. Horn* v. *Brass,* 36 Mont. 419, 93 Pac. 351; *State ex rel. Coad* v. *District Court,* 23 Mont. 171, 57 Pac. 1095.) The fact that O'Grady, the county clerk, refused to obey the writ, and that in contempt proceedings this court held the judgment invalid as to her, does not affect the result as to those who did act pursuant thereto.

The inhibition against the respondent O'Grady questioning [5] the correctness, justness or legality of the relators' claims extends also to the constitutionality of the Act upon which these claims are based, and she will not be heard in these

proceedings to say that the remedial Act passed by the seventeenth legislative assembly (Chap. 239, Sess. Laws 1921) is unconstitutional. There is a conflict among the authorities as to the right of a ministerial officer to raise the constitutionality of an Act of the state legislature. It will do no good to review them. The better considered cases hold and the greater weight of authority is, that a ministerial officer to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute will not be allowed to question its constitutionality. The rule is well and clearly stated in 12 Corpus Juris, section 183, page 765, as follows: "There is much conflict of authority as to whether, in an action to enforce the performance of a statutory duty by a ministerial officer, he may question the constitutionality of the statute imposing the duty. In some cases this right is denied to ministerial officers, both on the ground that their rights are not affected by the statute and on that of public convenience, while in other cases ministerial officers are permitted to question the constitutionality of a statute imposing a duty on them, and this rule is defended both on the ground of public convenience and on the ground that the officer may incur personal liability by executing a void statute. The better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with the statute, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be questioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable, by acting under a void statute." To the same effect is 6 Ruling Case Law, section 92, page 92.

There can be no liability on the county clerk, O'Grady, for drawing, signing and certifying the warrants ordered issued to the relators by the board of county commissioners. Ministerial officers, such as the respondent, are not liable for their

official acts, when acting under process, warrants or other in-
struments, fair upon their face, and issued from a superior
tribunal or board. (22 R. C. L., subject, "Public Officers,"
sec. 158, p. 481; *Mugrage* v. *People,* 26 Colo. App. 27, 141
Pac. 522.) Respondent O'Grady, by her answer, makes no
claim that any injury would result to her, or that any viola-
tion of a duty would be imputed to her by reason of her com-
pliance with the order of the board in the issuance of the
warrants. Neither is it claimed by her that any right of the
state or public generally would be in any manner impaired,
although we do not wish to be understood as saying that these
allegations alone would have been sufficient to entitle respond-
ent to question the validity of the board's acts in settling and
allowing relators' claims.

This court has, on several occasions, had before it the right
of one whose interests are not affected by a statute to ques-
tion its validity, and it has in each case held that one whose
rights are not affected thereby will not be heard to draw in
question the validity of a statute. First, in the case of *Spratt*
v. *Helena Power T. Co.,* 37 Mont. 60, 94 Pac. 631, it was
sought to question the constitutionality of an Act of the legis-
lative assembly, and the court said: "In answer to this con-
tention it is enough to say that even if the objection were
tenable—which we do not concede—appellants, who do not
belong to the class discriminated against, may not avail them-
selves of it."

The decision of the court in *Uihlein* v. *Caplice Com. Co.,*
39 Mont. 327, 102 Pac. 564, was to the effect that a foreign
corporation unaffected thereby might not raise the question
of the constitutionality of section 3823 of the Revised Codes
of 1907, under the contention that such statute placed a bur-
den on domestic corporations. In *State* v. *Rose,* 40 Mont. 66,
105 Pac. 82, the defendant convicted of a violation of the
statute prohibiting the betting on contests held outside the state
was held, in an opinion written by Mr. Justice Smith, not
competent to raise the question of the constitutionality of an

Act prohibiting horse-racing within the state of Montana. And in *State ex rel. Holliday* v. *O'Leary,* 43 Mont. 157, 115 Pac. 204, the court, speaking through Mr. Justice Holloway, and citing *Spratt* v. *Helena Power T. Co., supra,* enunciated the general rule as above stated. And, again in *Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542, the court declared, again speaking through Mr. Justice Holloway: "The plaintiff does not assert that he was denied the right to vote, and under these circumstances he fails to show that he has been injured, and, therefore, is not in a position to raise the question of the validity of the statute." The same rule is again enunciated, the court speaking through Mr. Chief Justice Brantly, in *Shea* v. *North Butte Min. Co.,* 55 Mont. 522, 179 Pac. 499, in which in deciding an attack upon the workmen's compensation law (Laws 1915, Chap. 96), on the ground of its alleged unconstitutionality, the court declared that certain powers vested in the board, such as the power to punish for contempt, might not be assailed by the plaintiff, because he "is not about to be tried by the board for a contempt, nor has he been convicted by it. Hence he is in no position to assail these provisions of the Act on constitutional grounds."

Applying the principle of these decisions to the facts of the instant case, it is clear that, while the board of county commissioners, whose duty it was to pass on, settle and allow claims against the county, could have questioned the legality of the claims and the constitutionality of the Act under which they arose, or raised any defect, if any, therein, that might have suggested itself to the board, such claims having been allowed by the board, one who acts in a ministerial capacity in carrying out the Act of the board, such as the county clerk, cannot question the constitutionality of the law upon which the claims are based. The county clerk's duty with respect to the drawing, signing and certifying of the warrants ordered by the board of county commissioners to be drawn on the county treasury of Sheridan county was mandatory on her, and in so doing she would act in only a minis-

terial capacity, without right or authority to question the validity of the relators' claims so settled and allowed by the board.

Finally, it is urged by the respondent O'Grady that she **[6]** cannot issue warrants in payment of claims so allowed by the board, because of the judgment and injunction issued by the district court of Sheridan county in the case of *Clair Stoner* v. *J. C. Timmons, supra,* pursuant to the order of this court on the decision of that case on appeal in this court. This court in that case held unconstitutional the Land Classification Act (Chap. 89, Sess. Laws 1919), under which the original contract with the relators was drawn. The seventeenth legislative assembly passed the curative Act previously referred to in this opinion. While the constitutionality of this curative Act, for the reason heretofore assigned cannot be questioned in this proceeding, the question of the effect of the Act on the decision of this court in *Stoner* v. *Timmons, supra,* will be considered. Its effect was to cure and validate that which was, before its enactment, invalid or illegal. The decision was the law as it then existed, and it may be assumed that the paramount object of the curative Act was to obviate the effect of the decision declaring the original Land Classification Act unconstitutional. In other words, the legislature sought to enact a law which would not be subject to the constitutional objection as was sustained to the first Classification Act. Such is frequently the purpose of curative legislation, and there is no rule of law or constitutional construction which forbids or prohibits legislation of this kind, provided, of course, that the curative Act itself is not for some other reason unconstitutional. (*Nottage* v. *City of Portland,* 35 Or. 539, 76 Am. St. Rep. 513, 58 Pac. 883; *Hall* v. *Street Commissioner of Boston,* 177 Mass. 434, 59 N. E. 68.) The curative Act gave to the board of county commissioners valid authority, where before there was none, to compensate the person or persons who had performed any work or labor or rendered any service in the classification of land in any county for

taxation or assessment purposes. Under the law as it existed at the time, the relators were deprived of any means of obtaining payment for the work done by them. So far as appears, the county has received full value, which, even though the contract was invalid in its inception by reason of the unconstitutionality of the Act, still imposes a moral obligation on the county to remunerate the relators. The language of the supreme court of Nebraska, in the case of *Gibson* v. *Sherman County,* 97 Neb. 19, 149 N. W. 107, is applicable to the condition presented by the petition in this case. The court there said, speaking through Justice Sedgwick: "In the case at bar the plaintiff furnished to the county full value for the amount of his claim. The county accepted, retained, and still has and is using the property so obtained. The statute at the time deprived the plaintiff ·of any remedy, and the district court so held. The subsequent Act of the legislature was not a determination that the district court was in error in so holding, but its purpose and effect was to remove the bar of the remedy. The county has received full value, which, if the contract is invalid, still imposes a moral obligation to remunerate plaintiff, and there is no doubt, under the authorities, that it was competent for the legislature to remove the technical bar of the statute, and, in doing so, would not exercise · any judicial function." To the same effect is *Richman* v. *Board of Supervisors,* 77 Iowa, 513, 14 Am. St. Rep. 308, 4 L. R. A. 445, 42 N. W. 422.

The question, however, is not a new one in this court, and the principle here stated was adopted by this court in the case of *State ex rel. Northwestern Nat. Bank of Great Falls* v. *Dickerman,* 16 Mont. 292, 40 Pac. 701. This court had previously held the issue of bonds in question in that suit invalid. (*State ex rel. Stanford* v. *School Dist. No. 1,* 15 Mont. 133, 38 Pac. 462.) After that decision was rendered, which was an action praying for an injunction restraining the issuance of the bonds, and the court having in effect held that the injunction ordered should be issued, curative legislation was enacted

and new bonds issued. The court then held the new issue valid. In other words, it was held that by the new legislation the former decision was no longer binding upon the parties or the public.

Again, in *In re Pomeroy*, 51 Mont. 119, 151 Pac. 333: The opinion discloses that one William B. Pomeroy, a citizen of the United States, instituted a proceeding in the district court, the object of which was to secure an adjudication of his right to certain moneys then in the hands of the state treasurer, and representing the value of property formerly belonging to the estate of Thomas M. Pomeroy, deceased. The district court granted the relief sought, but on appeal to this court by the state the judgment was reversed and the cause remanded for dismissal. (*In re Pomeroy*, 33 Mont. 69, 81 Pac. 629.) Subsequently the statute was amended by the legislature. Thereupon a new proceeding was instituted, a judgment rendered in favor of the petitioner, and an appeal taken by the state to this court. In substance, Mr. Justice Holloway said in discussing this feature of the appeal: ''It is the contention of the Attorney General that the former decision by this court constituted an adjudication of all the matters and things involved in the present proceeding, and is conclusive against the petitioner's right to have them determined a second time. * * * If this petitioner was seeking relief under or by virtue of the laws in force at the time he instituted the former proceeding, the judgment in that instance would be conclusive in this. But such is not his position. He seeks the same relief, but by virtue of a statute enacted since the judgment in the former proceeding was rendered. The conditions have changed and with them the issue as formerly made.''

The fact that this curative Act was passed after the claims [7] were presented to the board is immaterial. The case of *State ex rel. Bussell* v. *Abraham*, 64 Wash. 621, 117 Pac. 501, is illustrative of this proposition. A commercial water company was organized under an Act of 1909. The Act was subse-

quently declared void, in *State ex rel. Bussell* v. *Abraham,* 61
Wash. 601, 112 Pac. 671. Before the period within which a
petition for rehearing might be filed, the legislature passed a
validating (curative) Act containing emergency clauses. On re-
hearing the court said: "Can these statutes then be considered
on this appeal taken prior to their enactment? By reason
of their emergency clauses, they became effective before the
petition for rehearing was filed. Judge Cooley, in the sixth
edition of his work on Constitutional Limitations, at page
468, further says: 'Nor is it important  *  *  *  that the
legislative Act which cures the irregularity, defect, or want of
original authority, was passed after suit brought, in which
such irregularity or defect became a matter of importance.
The bringing of the suit vests in a party no right to a par-
ticular decision; and his case must be determined on the law
as it stands, not when the suit was brought, but when the
judgment is rendered.  *  *  *  And if a case is appealed,
and pending the appeal the law is changed, the appellate
court must dispose of the case under the law in force when
their decision is rendered.' (See, also, *Ettor* v. *Tacoma,* 57
Wash.. 50, 106 Pac. 478, 107 Pac. 1061.) The rule is well
established that curative statutes, intended to be retroactive
in their effect, and which do not impair the obligation of con-
tract, are applicable, not only to transactions to which they
are intended to relate, but also to cases pending in trial courts,
or pending upon appeal in appellate courts."

In order that there may be no misunderstanding as to the
[8]   extent of the writ of *mandamus* to be issued by this court
in this case it will reiterate that it is the duty of the county
clerk to draw, sign and certify warrants in payment of the
relators' claims referred to in the petition—and this contem-
plates the doing of all those things prerequisite to their pres-
entation by the relators in whose favor the warrants are to
be drawn to the county treasurer for payment, including their
delivery to the relators. The whole process constitutes the
issuance of the warrants. (*American Bridge Co. of New*

*York* v. *Wheeler,* 35 Wash. 40, 76 Pac. 534.) This court is necessarily proceeding upon the theory that such warrants have not been issued. If they have been, this proceeding would not lie. Incomplete warrants, as before indicated in this opinion, are to be considered as no warrants at all.

For the reasons herein stated, the motion of the respondent D. J. Olson, county treasurer of Sheridan county, to quash the alternative writ of mandate heretofore issued out of this court, is sustained, and he is dismissed from this proceeding, and he may recover his costs. As to the respondent R. G. Tyler, a member and the chairman of the board of county commissioners of Sheridan county, by reason of his default the petition as to him is taken as confessed; as to B. K. O'Grady, the clerk and recorder of Sheridan county, the petition states a cause of action against her; her answer and return to the writ do not state matters constituting a defense; and it is therefore ordered that a writ of *mandamus* issue out of and under the hand and seal of this court, directed to the said R. G. Tyler, as a member and as the chairman of the board of county commissioners of Sheridan county, Montana, and against B. K. O'Grady, as county clerk and recorder of Sheridan county, in conformity with the views herein expressed.

*Writ granted.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.

Rehearing denied September 25, 1922.