TOBACCO RIVER POWER CO., RESPONDENT, *v.* PUBLIC SERVICE COMMISSION ET AL., APPELLANTS.

(No. 7,955.)

(Submitted December 14, 1939. Decided January 5, 1940.)

[98 Pac. (2d) 886.]

523

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. John W. Bonner,* Special Assistant Attorney General, for Appellants, submitted an original and a reply brief; *Mr. Bonner* argued the cause orally.

524

*Messrs. Grubb & Rockwood,* for Respondent, submitted a brief; *Mr. Forrest C. Rockwood* and *Mr. E. G. Toomey,* of Counsel, argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

The respondent Tobacco River Power Company is a small utility corporation furnishing electrical energy for residents of the town of Eureka, Lincoln county, Montana, there being about 225 customers in the town. On May 27, 1930, a schedule of rates, filed by the utility company, was approved by the

Montana Public Service Commission. On April 17, 1936, a hearing was had by the appellant Public Service Commission to determine reasonableness of the rates then in effect. The respondent appeared and offered evidence as to the reasonableness of the rates. On July 7, 1936, the appellant made a report and order substantially reducing the rates, and also ordering the respondent to install a telephone as part of its service to its customers. Respondent, being dissatisfied with the order of the Commission, filed its complaint in the district court of Lincoln county, asking for an injunction *pendente lite* enjoining the appellant from enforcing the order of reduction and that upon final hearing of the cause the injunction be made permanent. The court issued the injunction prayed for, and the amounts representing the difference between the prevailing and reduced rates have since been deposited with the clerk of the district court of Lincoln county.

On May 24, 1938, the court on its own motion set the cause for hearing. Both parties appeared and offered evidence. After the hearing was concluded the court, pursuant to section 3906, Revised Codes, as amended by Chapter 56, Laws of 1937, caused to be transmitted to appellant a transcript of the testimony, and thereafter, on November 29, 1938, appellant advised the court that it would not modify, alter, amend or rescind the order from which the respondent took its appeal. Accordingly, on December 20, 1938, the court found all issues in favor of the respondent and entered its judgment and decree. From that judgment this appeal is prosecuted, the appellant asking that this court uphold the order of the Public Service Commission, or that the judgment be reversed so that all relevant evidence be received in order that the trial court be properly guided in determining whether or not the order of the Commission is reasonable or unreasonable.

The appellant assigns certain errors on the part of the trial court, which we shall take up in the order specified. First, that the evidence was insufficient to authorize the court to determine the value of the utility in order to determine whether or not the order of the Public Service Commission complained of was

unlawful or unreasonable. It is the appellant's contention that the court relied solely on what is known as the reproduction cost less depreciation theory in determining the fair value of the utility for rate-making purposes. In this respect the court found that the value of the utility was in excess of $40,000. From the evidence introduced it is not possible for us to say that the court excluded consideration of other evidence and methods for determining value.

The appellant contends strongly for the prudent investment theory as the proper method for determining fair value of the utility, and cites numerous magazine articles written by economists and dissenting opinions of various federal court judges in support of its contentions. Its position is untenable, if regarded as an exclusive method, as we believe that section 3884, infra, indicates that present fair value of the utility should be ascertained for the purpose of rate making.

No specific and exclusive method for determining value is mentioned in the Montana Code. Section 3884, Revised Codes, reads as follows: "The commission may, in its discretion, investigate and ascertain the value of the property of every public utility actually used and useful for the convenience of the public. In making such investigation the commission may avail itself of all information contained in the assessment rolls of various counties, and the public records of the various branches of the state government, or any other information obtainable, and the commission may at any time of its own initiative make a revaluation of such property."

The power of the state in regulating utility companies is very similar to the power of the state in eminent domain proceedings. Under the power of eminent domain a state may condemn and acquire private property for public use, but before doing so must compensate the owner. In other words, must make him whole, which merely means that it pays him the value of the property which is condemned and taken. In exercising its power of regulating rates of a utility company it appraises the value of the property, determines from evidence the cost and expense of operating the utility, allows for depreciation and fair return on investment,

and thereupon fixes rates for service to be rendered, which in effect is a restriction on the use, enjoyment and profits which the owner of the utility may have. In effect, the order of the Public Service Commission limits and regulates the use of the property so far as profit is concerned and quality of service rendered, but leaves the management of the business in private hands with the attendant obligations of rendering service, meeting costs of operation and exaction of government in the way of taxes. The Commission cannot under the law fix rates so low as to result in taking of property without just compensation to the owner.

The law is well settled in all jurisdictions, including Montana that rates must be just and reasonable, and likewise the return to the utility company on its investment and for service rendered must be fair, just and reasonable. (*Great Northern Utilities* v. *Public Service Com.*, 88 Mont. 180, 293 Pac. 294; *Minnesota Rate Cases,* 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151; *Smyth* v. *Ames* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.) No great difficulty should be experienced in determining fair value of the property of the utility company and just and reasonable rates which may be charged if both parties to a proceeding to determine the ultimate facts are candid, reasonable and fair with each other.

It is observed from section 3884, supra, that considerable latitude is allowed the Public Service Commission in determining value. Neither the Public Service Commission nor the utility company is limited to or bound by any particular method in arriving at the solution of the question of value. It must be borne in mind always that the ultimate fact to be determined is value upon which rates are based, which must of course be done under proper legal procedure and restrictions.

The cost of reproduction new, less depreciation, is usually regarded as one of the most important, if not the dominant, factor, in the determination of value. (51 C. J. 17.) Under the section of the Montana Code just cited, assessment rolls are likewise admissible as evidence of value, but of course are not

exclusive. When the state condemns property of a landowner it frequently resorts to assessed valuations as evidence, but more often than not the jury will determine damages and valuation in excess of that set out in the assessment rolls. Original cost, assessment values, cost of reproduction new, prudent investment theory, public records mentioned in section 3884, supra, and opinions of value are all means to an end, namely the determination of value. We can find no error in the procedure of the court in allowing evidence of cost of reproduction new, less depreciation, to be admitted as evidence of value.

The next assignment of error is that the court erred in determining the value of the utility on the date of the trial, rather than on the date the Commission issued the order complained of. On April 17, 1936, the appellant took evidence of the reasonableness of the rates, and the trial on the appeal from its order took place on May 24, 1938. On account of the long period of time intervening it is important that this question be settled, as considerable change could, and did, take place within that period of time.

Section 3906, Revised Codes, as amended by Chapter 56, Laws of 1937, reads in part as follows: ''If, upon the trial of such action, evidence shall be introduced by the plaintiff which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall transmit a copy of such evidence, to the Commission, and shall stay further proceedings in said action for fifteen days from the date of such transmission. Upon receipt of such evidence, the commission shall consider the same, and may modify, amend, or rescind its order relating to such rate or rates, fares, charges, classifications, joint rate or rates, regulation, practice, or service complained of in said action, and shall report its action thereon to said court within ten days from the receipt of such evidence.

''If the Commission shall rescind its order complained of, the action shall be dismissed; if it shall alter, modify, or amend the same such altered, modified, or amended order shall take the

place of the original order complained of, and judgment shall be rendered thereon, as though made by the Commission in the first instance. If the original order shall not be rescinded or changed by the Commission, judgment shall be rendered upon such original order."

It is thus seen that evidence different from that offered upon the hearing before the Commission, or additional thereto, may properly be offered upon the trial. This certainly would admit all evidence of any change in valuations, additions to a plant, or any other evidence that might affect the determination of the question whether the order of the Commission was unlawful or unreasonable. This is further borne out by the fact that the court, before proceeding to render judgment, is directed to transmit a copy of such evidence to the Commission for its further consideration, whereupon it might modify, amend or rescind its order relating to rates, etc.

An order of a Commission relating to rates or service may be based upon some deficiency of the utility company which might be supplied between the date of the hearing before the Public Service Commission and the date of trial before the district court, which should, of course, be considered by the Commission when the matter is referred to it by the court. It is not inconceivable that after a hearing before the Public Service Commission and before a trial on appeal to the district court, through the enactment of new or extension of old law, enormous increase in the exactions of government may take place through capital levies, pay-roll taxes, social security taxes, unemployment and industrial accident assessments. Thus the district court may receive a different view of the questions presented on appeal, the evidence relating to which the law requires it shall transmit to the Commission for its further consideration, before judgment is entered. The law seeks to avoid a multiplicity of hearings and suits, eliminate expense and permit a determination of the questions at issue in a fair and prompt manner. The question of determining values and rates is not a matter of catch as catch can, but

should be entered into by both parties to the proceeding honestly and fairly.

We conclude that the district court did not err in considering changes which took place in valuation of the utility company between the date of the hearing before the Public Service Commission and the date of the trial before it, and that the Public Service Commission should have considered such evidence when the district court referred the matter to the Commission.

The next specification of error relates to alleged illegal items which the court considered as constituting value of the utility, and refers to the purchase of a Diesel engine which the utility used in the production of electricity. The purchase of the engine was made after the hearing before the Public Service Commission and before the trial in the district court, the cost being several thousand dollars. For the reason stated above, there was no error on the part of the court in considering the ▮ value of this item. The court likewise considered the value of the water right. This being part of the production system of the utility company, it was a proper item of value to be considered.

The next specification of error relates to testimony of the ▮ witness Ferris on the ground that he was not qualified. It was shown that Ferris was a public accountant and auditor who had set up the bookkeeping system of the respondent and who was familiar with the plant, its books, reports and accounts, as well as its property. We find no error in allowing him to testify.

The next specification of error relates to the refusal of the court to permit witnesses on the part of appellant to testify, namely Harlan, an auditor of the Public Service Commission, who had accounting and utility accounting experience, and one Scott and Kuchan. The testimony of these witnesses, it would appear from the offer of proof, would be similar to that of the witness Ferris and should have been admitted. We believe the court committed reversible error in refusing the admission of the proposed evidence from these witnesses, as their

proposed testimony relates directly to value of the respondent's property. While part of the proposed evidence from these witnesses appears to have little value, yet this weakness goes to its weight rather than admissibility. Respondent contends that refusal to admit this offer would at most be harmless error, as the valuations the witnesses placed on the property would still not permit a return, under the new rates, sufficient to meet operating costs, let alone return on investment. If this result were shown to exist after proper procedure on the part of the Commission, we would be constrained to agree with respondent. As pointed out heretofore, the Commission, through misconstruction of the law, did not proceed properly, after the transcript of the evidence was sent to it by the trial court. One of the purposes of requiring the trial court to transmit, before judgment, different or additional evidence to the Commission is to afford the Commission an opportunity to correct its errors, as courts do not possess the power to fix rates. Upon such transmission the Commission may "modify, amend or rescind its order relating to such rates." Thus, while the evidence before the trial court might show rates to be unlawful or unreasonable, a modification of the Commission's order might save the work done by the Commission and trial court, obviate a new hearing, and prevent injustice which would result from releasing all moneys impounded, pending the hearing.

There was unreasonable delay on the part of the parties to this cause, in bringing it on for trial in the district court. The law requires that such matters be promptly disposed of, and they are given preference on the calendar. In this particular instance, where the appellant Commission, through misapprehension of procedure not previously before this court for interpretation, proceeded in an improper manner, we believe the ends of justice will best be served by a new hearing, with opportunity thereafter for the Commission to review all different or additional evidence and make an appropriate order.

The next specification of error is to the effect that the court erred in deciding the telephone ordered installed by the

534

Commission was not necessary in order to give service to patrons of the utility. The appellant does not seem to have abused its discretion in ordering this service. The evidence apparently supports the order that telephone service is necessary for the convenience of the customers, and at least does not show that the Commission's order was unlawful or unreasonable.

The last specification of error is that the court erred in considering evidence as to depreciation because of the manner in which depreciation funds were used by the utility. The question of depreciation, its amount and method of ascertainment, seems to be a rather troublesome one in proceedings of this nature. The rules which appear to be followed in most jurisdictions, including Montana, are set out in 51 C. J. 19, as follows:

"Where, in connection with the ascertainment of the present fair value of the property of a public utility, its reproduction cost is to be determined, the extent of the existing depreciation of plant and equipment must be ascertained and deducted from the cost of reproducing them new, notwithstanding they are presently capable of rendering substantially the same service as if new, and even though the effect of depreciation may be neutralized by adequate upkeep and reasonable replacements. Deductions should be made not merely for physical deteriorations, such as wear, decay, and depreciation, but also for obsolescence. Future depreciation is, of course, not to be taken into account.

"The amount to be deducted from the cost of reproduction new for depreciation is not controlled by any theoretical rule or measure, but should be determined by a careful consideration of the actual facts, respecting the physical condition of the particular property under consideration. The amount to be deducted should be determined by the actual reproduction value of the property in question, and not by its service value, that is, the relative usefulness in service of the particular item or appliance at the time to which the inquiry relates as compared to a new item or appliance of the same kind. The

accrued depreciation should be ascertained, where possible, by actual inspection or examination of the property, especially where the age of the various items of the property is different or the depreciation is wanting in uniformity, and such method of determination is always preferable to calculations or estimates based merely upon probabilities; but at best the ultimate determination must, to some extent, involve estimates and opinions, and in any particulars nothing better than estimated averages, based upon probabilities, is available. Accordingly, as to such matters it is proper to resort to the so-called 'straight-line' or percentage standard, which is based upon the age of the property in question and its probable life and usefulness, and assumes the accrual of depreciation at a uniform rate over the entire period. The so-called 'curved line' rule, which assumes that depreciation accrues slowly at first and more rapidly toward the end of the life of the property, is even more purely theoretical than the 'straight-line' method, and accordingly is not ordinarily to be adopted.

"Depreciation is not to be measured by the amount of a ▉▉▉ depreciation reserve fund set up by the utility, since it does not represent actual depreciation; but only what observation and experience suggest is likely to accrue, with some margin over. However, the maintenance of such a fund in an amount greater than the depreciation claimed by the utility at the time of the inquiry constitutes an admission against interest, which, although not irrevocably binding upon the utility, has more evidentiary value than mere estimates of outside experts."

We observe that the appellant Commission's witness Burke ▉▉▉ disregarded the straight line or percentage standard for determining depreciation, and also apparently disregarded the customary procedure for determining depreciation as set out in the rules of the Public Service Commission. He believed that because an annual charge had been allowed to accumulate on the books as depreciation to the extent of about $16,000, it was ground for reducing or practically eliminating the depreciation allowance. This, of course, is not the correct rule.

536

(See "Depreciation Reserve," supra, in 51 C. J.) However, the Public Service Commission allowed $1,000 per year to the utility company for depreciation. We cannot say as a matter of law, or from the evidence at the trial, that this figure is too low; but, of course, the matter should have been reconsidered in the light of additional and different testimony offered at the trial, which apparently the Public Service Commission disregarded.

In view of the errors occurring at the trial on the part of the court and the refusal of the Public Service Commission to give due consideration to the testimony adduced thereat upon receiving a transcript of the evidence from the court, it will be necessary to have a rehearing of at least some of the issues involved in this proceeding.

The judgment is reversed except as to the order of the Public Service Commission relating to the installation of the telephone, wherein it is ordered that the respondent comply therewith, and the cause is remanded to the district court with directions to hear the evidence indicated in this opinion, and such additional evidence as may be pertinent to the issues herein, and thereafter to comply with section 3906, Revised Codes 1935, as amended by Chapter 56, Laws of 1937. Each party to this proceeding shall pay its own costs on appeal.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES MORRIS and ERICKSON, and HONORABLE S. D. McKINNON, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.

Rehearing denied February 14, 1940.