No. 14310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN THE MATTER OF THE PETITION OF THE
MONTANA POWER COMPANY FOR INCREASED
RATES AND CHARGES IN GAS AND ELECTRIC
SERVICES; IN DOCKET 6348, ORDER No. 4220C,
DEPARTMENT OF PUBLIC SERVICE REGULATION,
MONTANA PUBLIC SERVICE COMMISSION.

---

Appeal from:   District Court of the Second Judicial District,
               Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Geoffrey Brazier argued, Helena, Montana
        James Paine argued, Helena, Montana

    For Respondent:

        Corette, Smith, Dean & Pohlman, Butte, Montana
        Kendrick Smith argued, Butte, Montana
        Church, Harris, Johnson and Williams, Great Falls,
         Montana

---

Submitted:   December 20, 1978

Decided: FEB 21 1979

Filed: FEB 21 1979

Thomas J. Kearney
                                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The Montana Power Company (Montana Power or MPC) filed several petitions for rate adjustments before the Public Service Commission (Commission or PSC) designated as Docket Nos. 6279 and 6327. By final amended petition Montana Power requested Commission approval of rates for electric utility service designed to produce an increase in annual operating revenues of $15,650,601 and approval of rates for natural gas service designed to produce an increase in annual gross operating revenues of approximately $28,800,000. At approximately the same time the Montana Consumer Counsel (Consumer Counsel) filed a petition for an electric rate decrease, Docket No. 6336. These matters were consolidated for hearing purposes into Docket No. 6348.

The Commission conducted public hearings in Helena in this docket from October 20 to November 6, 1975; from January 12 to January 23, 1976; and from February 2 to February 13, 1976. Individual commissioners also conducted public hearings in various cities throughout the state during November and December, 1975.

At the hearings conducted in Helena, the Commission heard the testimony of 54 witnesses and accepted 93 exhibits during the course of direct and cross-examination by the Commission, the Commission staff, Montana Power, the Consumer Counsel and intervenors Anaconda Company, Great Falls Gas Company, Hoerner Waldorf, Ideal Cement Company and the executive agencies of the United States government.

On July 26, 1976, Montana Power filed a petition to present additional testimony. This petition was subsequently denied on the ground that the testimony to be presented would have been irrelevant and prejudicial as it would have dealt with post-test year data.

Montana Power also filed a motion on July 26, 1976, for immediate temporary rate increases for its gas and electric services. This motion was argued before the Commission on August 12, 1976. On January 6, 1977, the Commission issued Order No. 4220B in which it granted MPC a temporary increase in its natural gas rate, refused to grant a temporary rate increase for electric service and denied the Consumer Counsel's petition for an electric rate decrease.

The case was submitted for decision to the Commission on December 13, 1976. By Order No. 4220C, dated February 23, 1977, the PSC granted Montana Power an electric rate increase of $2,069,000, much less than the $15,650,601 sought by MPC, and a gas rate increase of $26,862,000. No party has appealed any portion of the Commission's gas rate decision.

Montana Power appealed to the District Court two Commission "rate base" (the investment on which returns are allowed) determinations: the PSC's exclusion of $5.7 million from rate base as exceeding the original cost of the property to Montana Power, and the PCS's use of an average-year rate base, computed by dividing by two the sum of MPC's total plant investment at the beginning of the year and total plant investment at the end of the year.

Montana Power also appealed from a portion of the Commission order in which the PSC stated that it now found "questionable" an additional $15.7 million in rate base which, in 1944, the Commission had characterized as "original cost." Although the PSC did not exclude the questionable amount from rate base, it did order MPC to retain an independent accounting firm acceptable to the Commission to undertake a determination of the original cost of the prop-

erties in question. Montana Power also appealed from the order directing it to retain this accounting firm.

The District Court of the Second Judicial District, the Honorable Jack L. Green presiding, issued findings and conclusions on February 6, 1978, and judgment on February 22, 1978. The District Court affirmed the Commission as to its rate base determinations eliminating the $5.7 million and using an average-year rate base. From this portion of the District Court's judgment, Montana Power appeals further.

As to the portion of the Commission's order finding $15.7 million of Montana Power's rate base questionable, the District Court reversed the PSC on the ground that the Commission's 1944 finding that this amount was original cost could not now be questioned. The District Court further concluded that the order requiring Montana Power to retain an independent accounting firm was beyond the authority of the Commission and constituted a confiscation of Montana Power's property. The Commission and the Consumer Counsel have appealed from these portions of the District Court's judgment.

Additional facts are presented as they become relevant to the discussion of each issue.

This appeal presents for review the following issues:

1. Whether the District Court correctly affirmed the Commission's elimination of $5.7 million from Montana Power's electric rate base as being in excess of original cost.

2. Whether the District Court correctly held that the Commission had no authority to consider further an item of $15.7 million in rate base which had been defined as an original cost by the PSC in a 1944 decision and therefore

-4-

correctly held that the PSC had erroneously ordered a confiscatory accounting to determine original cost of this property.

3. Whether the District Court correctly affirmed the Commission's use of an average-year rate base and related property taxes, adjusted to include a major new facility (Colstrip Unit I), rather than a year-end rate base.

Before proceeding to a discussion of the specific issues raised by this appeal, we find it helpful to make some prefatory remarks regarding the relative roles and functions of the Montana Public Service Commission, the District Court and this Court in utility rate cases.

In Chapter 1, Title 70, Revised Codes of Montana 1947, now Chapters 1-3, Title 69 MCA, the legislature created the Public Service Commission of Montana and delegated to it the "duty . . . to supervise and regulate the operations of the public utilities." Section 70-101, R.C.M. 1947, now section 69-1-102 MCA. As part of these duties, the Commission is given the power to "investigate and ascertain the value of the property of every public utility actually used and useful for the convenience of the public." Section 70-106, R.C.M. 1947, now section 69-3-109 MCA. It is the proper exercise of this power that forms the basis of each of the issues in this appeal.

A utility dissatisfied with an order of the Commission has two statutory routes of appeal for judicial review: Section 70-128, R.C.M. 1947, now section 69-3-402 MCA, and section 82-4216, R.C.M. 1947, now sections 2-4-701 through -704 MCA, of the Montana Administrative Procedures Act. Montana Power has chosen the latter of these routes.

This statute strictly limits the scope of judicial review of an administrative agency decision. Under section 82-4216(1)(a), now sections 2-4-701, -702 MCA, only final agency decisions in a contested case may generally be reviewed. Only if review of the final decision would not provide an adequate remedy is a preliminary or intermediate agency action or ruling immediately reviewable.

Subsection (7), now section 2-4-704 MCA, of the same statute further limits the scope of review. Under that subsection a District Court is not allowed to substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The court may reverse or modify the administrative decision only if substantial rights of the aggrieved party have been prejudiced by virtue of enumerated agency violations or errors.

In Vita-Rich Dairy, Inc. v. Department of Business Regulation (1976), 170 Mont. 341, 553 P.2d 980, we examined the underlying rationale of this limited review statute and stated three basic principles in determining what the scope of review should be:

> "First. The Court recognizes that limited judicial review strengthens the administrative process. Limited review encourages the full and complete presentation of evidence to the agency by the participants in the administrative process by penalizing those who attempt to add new evidence or new lines of argument at the judicial review level. A de novo review encourages the participants to save their evidence until it really counts and present it first to the reviewing court rather than to the agency which has the knowledge and experience in the field it regulates. The result is that the agency which has the knowledge and experience in its substantive field does not hear all the evidence, making it difficult to make a proper decision. It also results in the decision being made by a reviewing court which does not have the specialized knowledge or experience in the area.
>
> ". . .

"Second. Judicial economy requires that the various functions involved in the administrative process must be divided on the basis of comparative abilities and qualifications of each body. Courts are specialists in constitutional issues, statutory interpretation, the requirements of a fair hearing, and the determination that a finding is supported by substantial evidence. The agency is a specialist in the substantive matter that the legislature delegated to it to regulate.

"Third. The agency's actions need a balancing check. In the absence of a body within the agency which is separated from the actual decision and in which all parties have confidence, a limited judicial inquiry to see (a) that a fair procedure was used, (b) that questions of law were properly decided and, (c) that the decision is supported by substantial evidence, is necessary." 170 Mont. at 343-45, 553 P.2d at 982-83.

Returning to our discussion of the roles of each participating governmental entity, we note that further review of an agency decision and District Court final judgment may be had on appeal to this Court. Section 82-4217, R.C.M. 1947, now section 2-4-711 MCA. While that section does not spell out our scope of review of an administrative agency action, that matter is fully settled by our cases:

"This court has recognized that the regulatory commissions of this state are invested with broad powers within their sphere of administration authorized by the legislature. Tobacco River Power Co. v. Pub. Service Comm'n, 109 Mont. 521, 98 P.2d 886. Even in quasi-judicial proceedings their informed and expert judgment receives proper consideration by the courts of this state when such judgment has been reached with due consideration of constitutional restraints. Baker Sales Barn, Inc. v. Montana Livestock Comm'n, 140 Mont. 1, 367 P.2d 775. Much that is done by these administrative agencies of the state, within the realm of administrative discretion, is exempt by the legislature from supervision by the courts if those restraints are obeyed.

". . .

". . . this court is always confronted in rate-making cases with the question of how far the court can go in interfering with, or directing the exercise of power, by an equal department of the government. We have repeatedly held that there will be no interference with the orders of the Commission unless:

"(1) they go beyond the power constitutionally given; or,

"(2) beyond their statutory power; or

"(3) they are based upon a mistake of law." Cascade County Consumers Ass'n v. Public Service Comm'n (1964), 144 Mont. 169, 185-86, 192, 394 P.2d 856, 865, 868.

and

"Even if we were so disposed by our personal views, we cannot substitute our discretion for that of the board unless we can say clearly that the order is unreasonable." Chicago, M., St. P. & P. R. Co. v. Board of Railroad Commissioners (1953), 126 Mont. 568, 575, 255 P.2d 346, 351.

We too are constrained in our review of agency actions by the principles enunciated in Vita-Rich Dairy, Inc.

In addition, the findings of a District Court come to us with a presumption of correctness:

"'. . . We have consistently held under such circumstances that this Court cannot substitute its weighing of the evidence for that of the trial court. When there is a conflict in the evidence, the findings of the trial court are presumed to be correct if supported by substantial evidence.' Sedlacek v. Ahrens (1974), 165 Mont. 479, 485, 530 P.2d 424.

"We have also held that the findings of the trial court, in a nonjury trial, will not be reversed on appeal, unless there is a clear preponderance of evidence against the findings." Montana Farm Service Co. v. Marquart (1978), ___ Mont. ___, 578 P.2d 315, 316, 35 St.Rep. 631, 633.

With these principles in mind, we now proceed to an analysis of each specific issue.

The elimination of $5.7 million from rate base. The Commission eliminated from Montana Power's rate base $5.939 million on the ground that the amount, by definition of the accounts, represented an investment in excess of original cost. The Commission did allow Montana Power to recover this amount itself, without any return, through amortization over a twenty-year period.

The excluded $5.939 million includes $5.787 million for plant acquisition adjustments that exceed the original cost of the properties. The $5.787 million was the remainder in an account in electric rate base approved by the Commission in 1944 with the specific ruling that this amount should remain in the account "for as long as the land rights involved are used by the company and continue to have value." Re The Montana Power Company (1944), 56 P.U.R. (N.S.) 193, 228-29. This ruling was expressly approved by the Commission in 1958 as constituting a part of the rate base for the purpose of determining rates, In re The Montana Power Company (1958), 24 P.U.R.3d 321, and was not questioned until the Commission and the Consumer Counsel responded to the petition of the Montana Power Company in 1975.

The balance of the $5.939 million is a $151,889 fee paid to an affiliate which had been found unjustified long ago by both the PSC and FPC. Montana Power appeals only the exclusion of the $5.7 million.

On the treatment of this item the District Court agreed with the Commission that this amount should be eliminated from the rate base. In the words of the District Court: "This amount is properly eliminated from rate base because by definition of the accounts [in which this item was recorded] this amount represents an investment which exceeds 'original cost.'"

In its reply brief to this Court, Montana Power concedes that in 1944 the Commission determined that the amounts were in excess of original costs and does not now contest that determination:

> "While we do not agree with Judge Green's
> decision as to the $5.7 million issue, that
> was an instance where the determination was
> one of acquisition adjustment, meaning an
> amount in addition to or exceeding original
> cost."

Section 70-106, R.C.M. 1947, now section 69-3-109 MCA, empowers the Commission to value the properties of utilities. This statute was amended in 1975 and now reads as follows with the amendment emphasized:

"The commission may, in its discretion, investigate and ascertain the value of the property of every public utility actually used and useful for the convenience of the public. The commission is not bound to accept or use any particular value in determining rates, provided that if any value is used, such value may not exceed the original cost of the property. In making such investigation the commission may avail itself of all information contained in the assessment rolls of various counties, and the public records of the various branches of the state government, or any other information obtainable, and the commission may at any time of its own initiative make a revaluation of such property."

This statute is dispositive of this issue. Under it, the Commission is obligated to eliminate from rate base all utility costs in excess of original cost. The $5.7 million was found long ago to be in excess of original cost and is therefore properly eliminated.

Montana Power's arguments against elimination of this item on the basis of res judicata and collateral estoppel are inapposite where an intervening statutory amendment completely changes the basis on which valuation of utility property is to be made. See, e.g., State ex rel. Lockwood v. Tyler (1922), 64 Mont. 124, 142, 208 P. 1081, 1088; In re Pomeroy (1915), 51 Mont. 119, 151 P. 333; State Farm Mutual Automobile Insurance Co. v. Duel (1945), 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.ed. 812, 819, citing Pomeroy and other cases for the "general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." Further, the

Commission has always had the power to make a revaluation of such property. Section 70-106, R.C.M. 1947, now section 69-3-109 MCA.

The judgment of the District Court on this issue is affirmed.

The consideration of the questionable $15.7 million and the order to retain an independent accounting firm. On this issue the District Court and the Commission disagreed. This disagreement as well as a summary of the relevant facts is recorded in Point No. 2 of the District Court's findings of fact:

> "On this Point No. 2 the Court finds, concludes, orders and adjudges as follows:
>
> "For convenience 'Finding of Fact 43' of Order No. 4220C is hereby quoted in its entirety:
>
> > "'43. Witness Hess urged the Commission to eliminate an additional $15,722,000 of electric rate base (Tr. 2751-2752). After the elimination of acquisition adjustments discussed in Finding No. 42, this is the amount by which Applicant's electric rate base still exceeds the original cost determination of the Federal Power Commission in Re the Montana Power Co., 4 F.P.C. 213, 57 P.U.R. (n.s.) 143 (1945). Because of the questionable nature of the adoption by the Montana Commission in its 1944 opinion of the concept "commercial value" (Tr. 2751), inclusion of this amount in an original cost depreciated rate base remains a matter of continuing concern. However, because the record in this docket is very limited on this point, the Commission declines to eliminate the difference. To deal with the problem in future proceedings, the Commission directs Applicant to take the action contained in Order paragraph 4.'
>
> "And Order No. 4 of the PSC is hereby quoted in its entirety:
>
> > "'4. Applicant is ordered to immediately take steps to retain an independent accounting firm acceptable to this Commission for the purpose of undertaking a determination of the original cost of Applicant's hydroelectric properties when first devoted to public use.'

"The Court finds that there was no basis in the facts before the PSC to justify the said 'Finding of Fact 43' of Order No. 4220C.

"The Court finds that there is no basis in law and there is no basis in fact for any consideration of the original cost determination of the FPC in 1945. The Court finds that the term 'commercial value' was used by the PSC in its 1944 decision but that the PSC found that the items, now amounting to $15.722 million, were all a part of original cost and were placed into plant account, being Account No. 100.1, Electric Plant in Service. Re The Montana Power Company 56 P.U.R. (n.s.) 193, 200, 202, 209-211 and 238 (Account 100.1, 320) (Mont. PSC 1944). No one, including the present PSC, can question these clear findings and conclusions by the PSC in 1944.

"The Court finds that there was no basis in law or in fact for the PSC in said 'Finding of Fact 43' to consider, or for continuing concern about this amount of money in an original cost depreciated rate base.

"The Court finds that the PSC was required to and did decline to eliminate this item of $15.7 million of electric rate base.

"The Court finds that there was no basis in fact or law which would justify the PSC in adopting said Order No. 4; and the Court finds that this Order No. 4 was capricious and would impose upon Montana Power an estimated cost at a minimum of over $300,000 and any determination by an independent accountant would not be binding upon anyone."

The District Court concluded:

"4. The Court concludes that there were no facts upon which the PSC could challenge or consider questionable this $15.722 million in electric rate base.

"The Court concludes that the requirements in Order No. 4 are beyond the jurisdiction of the PSC and would constitute a clear confiscation of $300,000 or more of the property of Montana Power."

As the matter developed in the earlier proceedings, this issue was found to contain two subissues which were handled separately by the District Court: (a) the statement by the Commission of its "continuing concern" over this $15.7 million, and (b) the order by the Commission that MPC had to retain an independent accounting firm acceptable to

the Commission to determine the original cost of the property in question. For convenience, we also will consider the items separately.

Initially, Montana Power argues that, by virtue of a post-judgment motion by Consumer Counsel and supported by a brief by the Commission, these two agencies have conceded that the Commission's statement of continuing concern and order of an independent audit were improper and unlawful and therefore, no real issue as to these matters exist on this appeal. We disagree.

The motion by Consumer Counsel would have altered the District Court judgment to read (with the alterations emphasized):

> "Based upon the facts before the PSC, the Court finds that the PSC was required to and did decline to eliminate this item of $15.7 million of electric rate base.
>
> "Based upon the foregoing, the Court finds that there was no basis in fact which would justify the PSC in adopting said Order No. 4. Thus, said Order No. 4 is arbitrary and capricious.
>
> "'4.' of Conclusions of Law - to read:
>
> "'4. The Court concludes that there were no facts upon which the PSC could challenge or consider questionable this $15.722 million in electric rate base.
>
> "'On account of the lack of a factual basis, the Court concludes that the requirements in Order No. 4 were unlawful.'"

This motion was not granted, therefore Consumer Counsel's position was not adopted by the District Court. More important to our conclusion is the reason stated by Consumer Counsel for advancing this motion:

> "Consumer Counsel advances this Motion so that the above-mentioned Findings and Conclusions will not be given an interpretation which conflicts with the clear language in the remainder of the Court's Findings, Conclusions and Judgement provisions."

Thus, the motion was not designed so much to concede the impropriety of that part of the District Court's judgment concerning the questionable $15.7 million as it was intended to strengthen that part of the District Court judgment relating to the exclusion of the $5.7 million by removing any possibility of an inconsistent interpretation of the judgment as a whole. When the motion was denied, Consumer Counsel was free to attempt the alternative means of removing what it perceived to be an apparent inconsistency in this order by obtaining a complete reversal of the part of the judgment relating to consideration of the $15.7 million.

As to the conclusion of the the District Court "that there were no facts upon which the PSC could challenge or consider questionable this $15.722 million in electric rate base", we conclude that this was an improper, premature intrusion by the District Court into the administrative process and therefore reverse.

The expression by the Commission of its continuing concern over this $15.7 million possibly in excess of original cost is not a final decision by the Commission; nor does it qualify as a preliminary ruling for which review of any final order would not be adequate. At best this has created a nonissue. If in the future, after a proper hearing, an adverse final order be issued on the matter, judicial review would be in order.

Montana Power has suffered no loss on this matter and in fact may never suffer any loss. Montana Power recognized this prematurity in its reply brief to the District Court:

> "The only relevance of all of the discussion of the $15.7 million is in connection with the right or authority of the Commission to order Montana Power to retain an independent accountant." (Emphasis in original.)

And in its reply brief to this Court, MPC stated:

"In declining to act now, the PSC has clearly
given an indication of what it will do in future
proceedings; and to that end, the PSC has ordered
MPC to hire independent accountants." (Emphasis
added.)

As we have noted, the Public Service Commission is empowered to "investigate and ascertain the value of the property of every public utility." Section 70-106, R.C.M. 1947, now section 69-3-109 MCA. Under the same statute, as it has read from the time of its first enactment in 1913, "the commission may at any time of its own initiative make a revaluation of such property."

In its use of the term "revaluation" the legislature clearly contemplated the possibility that later Public Service Commissions, under appropriate circumstances, may modify or alter the property valuations made by earlier commissions.

Administrative policies change, compelled by changing social or economic conditions or by changing statutory guidelines. In 1975, by its amendment to section 70-106, now section 69-3-109 MCA, the legislature changed one of the basic principles upon which utility rate bases had been calculated in Montana. Before 1975 utility rate bases were calculated on the basis of the reproduction cost new or commercial value of utility plants, of which original cost was only one factor to be considered. See, e.g., Re The Montana Power Company, 56 P.U.R. (N.S.) at 200, 204; State ex rel. Olsen v. Public Service Commission (1957), 131 Mont. 272, 276-77, 309 P.2d 1035, 1038; Tobacco River Power Co. v. Public Service Commission (1940), 109 Mont. 521, 529-30; 98 P.2d 886, 890. From 1975 forward, however, the legislature transformed original cost into the factor to be

-15-

considered in rate base calculation; from 1975 forward, utility plants could not be valued in excess of original cost. Section 70-106, R.C.M. 1947, now section 69-3-109 MCA. The determination of original cost, therefore, has a new importance in the setting of utility rates.

We now proceed to the question of the Commission's authority in ordering Montana Power to retain an acceptable, independent accounting firm to investigate the original costs of the $15.7 million properties. Unlike the statement of continuing concern, this is a final order by the Commission which does impose an obligation on Montana Power and is therefore reviewable under section 82-4216(1)(a), now section 2-4-702 MCA. National Van Lines, Inc. v. United States (7th Cir. 1964), 326 F.2d 362, 372.

The District Court concluded that the order of the Commission that Montana Power retain the accounting firm was "beyond the jurisdiction of the PSC and would constitute a clear confiscation of $300,000 or more [as the estimated cost of the accounting] of the property of Montana Power." We agree with the District Court and hold that the Commission lacks the requisite statutory authority to compel Montana Power to hire an independent accounting firm acceptable to the Commission for the purpose of determining the original costs of the disputed properties. City of Polson v. Public Service Comm'n (1970), 155 Mont. 464, 469, 473 P.2d 508, 511.

The power of the Commission under section 70-106, now section 69-3-109 MCA, to "investigate and ascertain" the value of utility property has been discussed above. The means and authority by which the Commission is to conduct

its investigation is indicated in several statutes. E.g., sections 70-106, -107, -108, -117, R.C.M. 1947, now sections 69-3-109, 69-3-202, 69-3-203, 69-3-106 MCA.

The Commission asserts these statutes give it the necessary authority to compel an independent audit. We do not read the authority granted therein so broadly. Instead, it is clear from the statutes that the Commission is empowered only to request desired information from a utility, not to direct the means by which such information is to be gathered. Under such authority, the Commission is clearly empowered to request and obtain from Montana Power accounting information on the original costs of disputed properties, but it is up to Montana Power to decide how to go about collecting this information.

The Commission argues that, if Montana Power conducts the audit itself, the results "would be tainted by suspicions of self-interest." This argument could be applied to any information supplied by any utility to the Commission. Yet from the above-noted statutes, it is clear that the primary source of information about utility operation is the utility itself. E.g., sections 70-107, -108, R.C.M. 1947, now sections 69-3-202, -203 MCA. The Commission, of course, is always free to weigh any such information against any information to the contrary presented by other agencies or its own staff.

For the foregoing reasons, the judgment of the District Court that the Commission cannot question the inclusion of the $15.7 million in Montana Power's rate base is reversed. The judgment of the District Court that the Commission lacks authority to compel an independent audit is affirmed.

The Use of Average-Year Rate Base.  On this item, the District Court and the Commission agreed.  The findings of the District Court are again helpful:

> "The Commission calculated Montana Power's revenues on the basis of the average rate base for the test year and included only one-half the test year property taxes to be consistent with average rate base.  Findings 44 and 58A.  The 'rate base' includes a utility's unrecovered investment, upon which the utility is entitled to earn a return from its customers.  (The revenue requirement also covers expenses such as taxes, depreciation, fuel, wages, etc.)  The value of the average rate base is that it matches the revenues and expenses occurring during the test year.  The required matching of annual revenues and expenses with average rate base follows the same principle as calculating annual interest charges on the average amount of debt outstanding during the year, not the year-end level of debt.  The Commission's decision is supported by the record evidence and by authority and is therefore affirmed.

> "In the record, Consumer Counsel witness Hess recommended that Montana Power's test-year rate base be calculated according to the average Montana Power investment in electric service facilities and related facilities during the months of 1975, adjusted to include the investment [in] the Colstrip I generating unit from the beginning of the year 1975 with related revenue and expense adjustments.  He testified that the principal reason for using an average rate base, rather than a year-end rate base, is that an average rate base matches the revenues received and expenses incurred during the course of the test year (Tr. 2742-4).  While other states do sometimes utilize the year-end base, Petitioner has failed to establish that the Commission erred in not using the year-end rate in this case.

> "Inevitably the rates set by regulatory commissions may prove too low or too high.  However, a commission must decide a case on the basis of the record before it.  In this case, the Commission acted within reason and on the basis of the evidence in deciding that Montana Power had not carried its burden of proof to justify a year-end base."

One further fact warrants mentioning.  The average-year rate base adopted by the Commission and adjusted to include Colstrip I for the entire year includes nearly 90 percent of Montana Power's increased investment for the year.  Of

Montana Power's claimed increase in plant investment over the year of $92.5 million, all but $8.8 million was allowed in rate base by the Commission.

On this issue, the principles of Vita-Rich Dairy Inc. regarding agency expertise and our comments concerning the scope of review become most important. From the briefs submitted and the cases cited by both sides, it appears that both the year-end rate base urged by Montana Power and the average-year rate base adopted by the Commission may be correct and proper methods for valuing utility property under certain circumstances. The Commission itself has used both methods in recent years. Cf. Montana-Dakota Utilities Company (1959), 28 P.U.R.3d 355 (year-average, original cost rate base) with Montana Power Co. (1962), 42 P.U.R.3d 241 (year-end fair value rate base.) It is interesting to note that in a very recent case involving Montana Power, the Commission adopted an average rate base. Commission Order No. 4350D, Docket No. 6454, Service Date 4-25-78, Application of Montana Power Company. Apparently, Montana Power has not contested the Commission's employment of average rate base in this more recent case.

A federal administrative law judge analyzed the various issues in the case of Union Electric Co. (1972), 47 FPC 144, 176, aff'd 47 FPC at 151:

> "The test year concept requires that revenues, expenses and investment be synchronized--that they relate to the same period. When revenues for the entire test year are used, the corresponding rate base is the average for the year. This is the usual practice. E.g., United Fuel Gas Company, 12 F.P.C. 251, 256 (1953).
>
> "Union wants to use the year-end rate base, which is larger than the test year average because of successive plant additions made over the year. It does not want to include as a corresponding adjustment the additional revenues

and expenses associated with the larger investment. Union's proposal produces a distortion in the test year results, and is therefore objectionable.

"Union's reason is that because of regulatory lag during the period of rising costs it needs extra money. If regulatory lag reduces return below a fair amount, this should be dealt with as a separate problem. Moreoever, Union shows no specific relationship between any inadequacy due to regulatory lag and the extra amount that would be derived from the use of a year-end rate base.

"The Commission has on occasion used a year-end rate base where the particular facts warranted. Otter Tail Power Company, 8 F.P.C. 393, 401 (1949); United Gas Pipe Line Company, 31 F.P.C. 1180, 1194 (1964). But Union has not shown that this technique is necessary to insure it a fair return in this proceeding."

During the proceedings before the Commission, it was brought out that when a year-end rate base is adopted, proper regulatory principles requires a concomitant recalculation of revenues and expenses so as to match income and expenses with the increased rate base. In this case, Montana Power failed, or refused, to offer the necessary adjustments.

Montana Power's complaints concerning inflation and regulatory lag as justification for a year-end rate base are not convincing. As noted by commissions in other states:

"That inflation, attrition and regulatory lag may exist does not mandate the Commission's use of a terminal [period end] rate base to resolve these problems." Maryland Pub. Service Commission v. Baltimore Gas & E. Co., (1974), 273 Md. 357, 329 A.2d 691, 698.

"While a few commissions are finding it popular today to use year-end rate bases and variations thereof, this commission has steadfastly continued to insist that the problems of inflation and attrition, such as they are, are more properly the concern of rate of return. Artificial and mechanical adjustments to rate base usurp the function of rate of return and can only be misleading to all concerned." Re Niagara Mohawk Power Corp., (N.Y. 1960), 35 P.U.R.3d 149, 158.

What the issue boils down to is this: the Commission adopted an entirely correct and proper method of valuation which the District Court affirmed. Montana Power on appeal urges us to adopt a different, albeit correct and proper, method of valuation but has failed to make the normal adjustments to revenues and expenses to reflect the year-end investment. In the absence of any evidence that the Commission acted unlawfully or disregarded recognized regulatory procedures and practices, we are bound by our limited scope of review to affirm the District Court. This reasoning and conclusion applies also to the related treatment of Montana Power's taxes for 1975.

In summary the judgment of the District Court that the Commission properly excluded $5.7 million from Montana Power's rate base and properly adopted an average-year rate base is affirmed. The judgment of the District Court that the Commission could not at any time in the future consider or challenge an additional $15.7 million of Montana Power's rate base is reversed. The judgment of the District Court that the Commission lacks authority to order Montana Power to hire an acceptable, independent accounting firm to determine the original cost of certain Montana Power properties is affirmed.

_____
                  Justice

We concur:

_____
      Chief Justice

_____

_____
      Justices

Mr. Justice Daniel J. Shea, deeming himself disqualified, did not sit in this case.

-21-