FILED

07/27/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0570

DA 20-0570

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 186N

JAMES T. GRUBA, ELIZABETH A. GRUBA,
LEO G. BARSANTI and JEANNE R. BARSANTI,

      Petitioners and Appellants,

      v.

MONTANA PUBLIC SERVICE COMMISSION,

and

NORTHWESTERN CORPORATION
d/b/a NORTHWESTERN ENERGY,

      Respondents and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV-2019-391
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Russell L. Doty, Attorney at Law, Greeley, Colorado

      For Appellees:

          Zachary Taylor Rogala, Luke Casey, Montana Public Service
Commission, Helena, Montana

          Sarah Norcott, NorthWestern Energy, Helena, Montana

Submitted on Briefs:  June 30, 2021

Decided:  July 27, 2021

Filed:

                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 James and Elizabeth Gruba and Leo and Jeanne Barsanti (Gruba and Barsanti) appeal an order from the First Judicial District Court, Lewis and Clark County, holding the Public Service Commission's (Commission) findings and conclusions in final order 7084aa were supported by substantial evidence; that NorthWestern Energy (NorthWestern) did not recover revenues in excess of its investment; that Admin. R. M. 38.5.106 (1977) does not apply to Gruba and Barsanti's matter; and the Commission's use of an internal staff memorandum and decision to limit the scope of the complaint did not violate Gruba and Barsanti's due process rights. We affirm.

¶3 This matter began in 2010 when Paul Williamson, Vern Klingman, Patricia Klingman, and Russell Doty (collectively "original parties") filed a complaint with the Commission regarding the Commission's approval of NorthWestern's street lighting rates in Billings, Montana. The Commission dismissed the case for lack of standing. The original parties filed for judicial review in the Thirteenth Judicial District Court, Yellowstone County, which affirmed the Commission's dismissal. The original parties then appealed to this Court, which concluded the original parties should be allowed to file an amended petition to address lack of standing; however, they were not

entitled to costs or a rate reduction because they had not exhausted their administrative remedies. *Williamson v. Mont. Pub. Serv. Comm'n*, 2012 MT 32, 364 Mont. 128, 272 P.3d 71 (*Williamson I*) (affirming the district court's decision and remanding the matter to the Commission to consider an amended complaint); *Williamson v. Mont. Pub. Serv. Comm'n*, 2012 MT 299, 367 Mont. 379, 291 P.3d 1116 (*Williamson II*) (affirming the district court's denial of both attorney fees and initiating an immediate rate reduction).

¶4    In 2014, Gruba and Barsanti, and others, filed an amended complaint before the Commission in which they argued numerous issues, including "global warming, energy independence, LED lighting technology, the ownership charge in the NWE street lighting tariff, roadway safety, and the continued bleaching of the Great Barrier Reef in Australia." In 2015, the Commission narrowed the scope of the amended complaint to address solely the ownership charge for street lighting and denied Gruba and Barsanti's class certification. Following the denial of class certification, Gruba and Barsanti sought judicial review with the First Judicial District Court. The Commission filed a motion to dismiss, which was granted by the district court. Gruba and Barsanti appealed to this Court, which affirmed the district court's decision in a noncitable memorandum opinion. *Gruba v. Mont. Pub. Serv. Comm'n*, DA 15-0736, 2016 MT 131N, 2016 Mont. LEXIS 462 (affirming the district court's decision to dismiss Gruba and Barsanti's petition before the Commission and denying their interlocutory review of the Commission's actions under § 2-4-701, MCA).

¶5    Gruba and Barsanti filed additional motions alleging they were overpaying for street lighting facilities, that the Commission allowed NorthWestern to collect more than

3

the original costs of its investments, and that the ownership charge was unreasonable and unjustly discriminatory. In February 2019, the Commission, in final order 7084aa, concluded that NorthWestern's service classifications regarding a street lighting tariff, Electric Lighting Delivery Service (ELDS-1), were not unjustly discriminatory or preferential in violation of §§ 69-3-306(1), -321(1), and -330(1), MCA. The Commission determined the rate design employed by NorthWestern had been utilized for decades by regulators across the country and it would be administratively burdensome and costly to set rates by individual district. The Commission also concluded that as of 2017, NorthWestern's account had $29,595,351.77 in original street lighting infrastructure costs, while the accumulated depreciation for street lighting equaled $16,861,718.33; the net original infrastructure costs ($29,595,351.77) less the depreciation ($16,861,718.33) equaled the amount remaining to be collected through rates paid by customers, which totaled $12,733,634.

¶6 Following the dismissal of their petition by the Commission, Gruba and Barsanti sought judicial review, once again, with the First Judicial District Court. The District Court affirmed final order 7084aa. Gruba and Barsanti appeal to this Court asserting numerous issues, including: (1) whether the District Court erred in failing to enforce §§ 69-3-109 and -321, MCA, when it affirmed final order 7084aa; (2) whether the District Court's decision to affirm final order 7084aa was clearly erroneous when the Commission concluded that Admin. R. M. 38.5.106 (1977) was not relevant; (3) whether the District Court erred when it held customers were not entitled to refunds and NorthWestern did not recover more than the original costs of streetlights; and (4) whether

4

Gruba and Barsanti's procedural due process rights were violated when the Commission considered an internal staff memorandum and when it narrowed the issue in the amended complaint.

¶7 This Court reviews agency contested case decisions to determine whether its factual findings are clearly erroneous and whether its legal conclusions are correct. *Vote Solar v. Mont. Dep't of Pub. Serv. Regulation*, 2020 MT 213A, ¶ 35, 401 Mont. 85, 473 P.3d 963. Findings of fact are clearly erroneous if "not supported by substantial evidence in the record, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves the court with a definite and firm conviction that a mistake has been made." *NorthWestern Corp. v. Mont. Dep't Pub. Serv. Regulation*, 2016 MT 239, ¶ 26, 385 Mont. 33, 380 P.3d 787. This Court reviews agency interpretations of statutes for correctness. *Mont. Envtl. Info. Ctr. v. Mont. Dep't of Envtl. Quality*, 2019 MT 213, ¶ 24, 397 Mont. 161, 451 P.3d 493 (*MEIC*). This Court also affords "great weight" to the Commission's interpretations of its own regulations, unless the interpretation "is plainly inconsistent with the spirit of the rule, considering a range of reasonableness permitted by the regulation's wording." *Vote Solar*, ¶ 37 (citing *MEIC*, ¶ 23). While an agency possesses "specific, technical, and scientific knowledge," the agency must "articulate a satisfactory explanation for its actions and provide a rational connection between the facts found and the choice made." *Vote Solar*, ¶ 36. "This Court will not defer to an agency's incorrect or unlawful decisions but will only defer to an agency action within permissible statutory bounds." *Vote Solar*, ¶ 37. This Court may not substitute its judgment for that of the agency as to the weight of the

evidence on questions of fact, however, the Court may reverse or modify agency decisions for abuse of discretion. Section 2-4-704(2)(a)(vi), MCA. Abuses of discretion occur when a trial court acts "arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Elec. Coop.*, 1998 MT 306, ¶ 13, 292 Mont. 118, 970 P.2d 84.

¶8 Title 7, Chapter 12, Part 43 contains the statutory authorities pertaining to special improvement lighting districts. A town council or city council is authorized to create a special lighting district on any street or streets or public highway for the purpose of lighting them and assess the costs for installation and maintenance to property abutting thereto and collect the costs by special assessment against the property. Section 7-12-4301, MCA. The costs of installing, maintaining, and supplying electrical current for the street lighting system are to be borne, in whole or in part, by the owners of property within the lighting district. Sections 7-12-4301(1)(b), and -4321, MCA. The city or town council is authorized to assess and collect these costs by special assessment against said property. Section 7-12-4301(1)(c), MCA.

¶9 If a public utility, as defined in § 69-3-101, MCA, provides for the installation, maintenance, or operation of the lighting system, the installation, maintenance, or operation must be performed in accordance with the public utility's applicable tariff schedule. Section 7-12-4308(3), MCA. Pursuant to § 69-3-306(1), MCA, the Commission has authority to prescribe "classifications of the service of all public utilities." Classifications may account for the quantity used, the time when used, and any other reasonable consideration; and each public utility is required to conform its schedule

6

of rates, tolls, and charges to such classifications. Section 69-3-306(1), MCA. The Commission has approved numerous customer classes for NorthWestern, including residential (Tariff Schedule REDS-1), small commercial (Tariff Schedule GSEDS-1), large commercial (Tariff Schedule GSEDS-2), irrigation (Tariff Schedule ISEDS-1), and street and area lighting (Tariff Schedule ELDS-1). *Williamson I*, ¶ 4. "NorthWestern directly bills the members of the street and area lighting class for the provision of street lighting service." *Williamson I*, ¶ 5. Included within the ELDS-1 class are municipalities, such as the City of Billings, which pay the street lighting service. "Property owners in the street lighting districts do not pay NorthWestern directly for the provision of street lighting service." *Williamson I*, ¶ 5.

¶10 ELDS-1 customers can include municipalities which administer various street lighting districts, which may include numerous NorthWestern owned streetlights. Customers are not required to obtain street lighting service through NorthWestern-owned streetlights and can, instead, acquire their own streetlights and connect them to NorthWestern's electricity delivery system. ELDS-1 street lighting infrastructure includes, but is not limited to, pole bases, poles, mast arms, luminaires, and wiring from the distribution system to the luminaires. NorthWestern includes street lighting infrastructure costs in calculating rate base, which is a component of its cost of service used to establish rates. Admin. R. M. 38.5.123 (1977) and 38.5.146 (1977).

¶11 Gruba and Barsanti first assert the District Court erred in failing to enforce §§ 69-3-109 and -321, MCA, when it affirmed the Commission's decision to dismiss the complaint, thus allowing NorthWestern to recover more than the original costs.

7

Section 69-3-109, MCA, pertains to the Commission's authority to ascertain property values. It states:

> The [C]ommission may, in its discretion, investigate and ascertain the value of the property of each public utility actually used and useful for the convenience of the public. *The [C]ommission is not bound to accept or use any particular value in determining rates. However, if any value is used, the value may not exceed the original cost of the property*, except that the [C]ommission may include all or some of an acquisition adjustment for certain property purchased by a public utility in the purchasing utility's rate base if the transfer of the property to the purchasing utility is in the public interest. In making the investigation, the [C]ommission may avail itself of all information contained in the assessment rolls of various counties or in the public records of the various branches of the state government or of any other information obtainable, and the [C]ommission may at any time on its own initiative make a revaluation of the property.

(Emphasis added.) Section 69-3-109, MCA, prevents a utility from earning more than what it actually paid for a given asset. In *In re Mont. Power Co.*, 180 Mont. 385, 398-99, 590 P.2d 1140 (1979), this Court held:

> Before 1975 utility rate bases were calculated on the basis of the reproduction cost new or commercial value of utility plants, of which original cost was only one factor to be considered . . . . From 1975 forward, however, the legislature transformed original cost into *the factor* to be considered in rate base calculated; from 1975 forward, utility plants could not be valued in excess of original cost. The determination of original cost, therefore, has a new importance in the setting of utility rates.

(Emphasis in original.) The Commission has consistently applied a system-wide service classification approach for its street lighting customers. Under this service classification, any rate base value used to determine ownership charges must include NorthWestern's entire street lighting infrastructure costs, not just the costs for a single district. Section 69-3-321, MCA, applies to complaints against a public utility and the Commission's responsibility to proceed with an investigative hearing. The investigative

8

hearing must pertain to complaints that: "(a) any of the rates, tolls, charges, or schedules or any joint rate or rates are in any way unreasonable or unjustly discriminatory . . . ." Section 69-3-321, MCA.

¶12 The District Court held there was substantial evidence to show that NorthWestern had not received more than the cost of its investment due to its remaining net balance of $12,733,634. It also concluded the Commission does not account for its costs on a district by district basis and while Gruba and Barsanti are correct to note that their taxes may be put towards other infrastructure in separate districts, NorthWestern did not violate § 69-3-109, MCA, because it has not collected more than the original costs of lighting infrastructure from its customers as a whole. This Court agrees that the Commission has demonstrated a history of implementing the total plant costs on a system-wide basis rather than through a district to district basis. The value in calculating costs in such a manner does not exceed the scope of § 69-3-109, MCA, as the Commission's statutory responsibility is to not exceed the original cost of NorthWestern's property. As such, there is competent substantial evidence to support the findings of the District Court and the Commission.

¶13 Gruba and Barsanti next assert the District Court's decision to affirm final order 7084aa was clearly erroneous because it did not consider Admin. R. M. 38.5.106 (1977). Admin. R. M. 38.5.106 (1977) requires that:

> Any proposed adjustments to book costs shall be explained in writing. Such adjustments shall be shown separately and shall be fully supported, including schedules showing their derivation, where appropriate. However, *no adjustments shall be permitted unless based on changes in facilities,*

9

*operations, or costs* which are known with certainty and measurable with reasonable accuracy at the time of the filing.

(Emphasis added.) This Court concludes the District Court properly held Admin. R. M. 38.5.106 (1977) does not apply to Gruba and Barsanti's untimely claim because the rule applies only "at the time of the filing."

¶14 Gruba and Barsanti additionally allege the District Court erred in concluding NorthWestern was not obligated to refund alleged street lighting overcharges. The District Court concluded this issue was moot because it previously held there was no evidence of overcharges from which to issue a refund. The District Court stated even if such an overcharge existed, it was not for the District Court to decide which type of streetlights NorthWestern should purchase or how any alleged overcharge should be allocated. This Court concludes the District Court did not err in determining there were no overcharges and agrees that the designation of which streetlights are used and how any overcharges should be allocated is not within the District Court's authority; that responsibility lies solely within the Commission's statutory discretion.

¶15 Lastly, Gruba and Barsanti assert procedural due process violations regarding the Commission's utilization of an internal staff memorandum without providing customers the ability to respond. They further argue the Commission's decision to limit the complaint only to the issue of streetlight overcharges violated their right of due process. Due process is guaranteed by the Montana Constitution under Article II, Section 17. Procedural due process in an administrative agency contested case generally requires, at a minimum, reasonable notice and the opportunity to be heard. Section 2-4-601, MCA.

10

The Montana Administrative Procedure Act bars discussion of issues in contested case proceedings unless all parties were provided notice and afforded an opportunity to participate. Section 2-4-613, MCA. Section 2-4-612(5), MCA, provides, "[a] party shall have the right to conduct cross-examinations required for a full and true disclosure of fact, including the right to cross-examine the author of any document prepared by or on behalf of or for the use of the agency and offered in evidence." Gruba and Barsanti allege the Commission's internal staff memorandum constitutes a document prepared by an agency, offered in evidence, and that they had no opportunity to contest the validity or otherwise refute the document. The District Court concluded the staff memorandum was similar to a bench memo submitted to judges by a law clerk. Thus, the Commission's decision to consider an internal staff memorandum did not violate due process or otherwise constitute an ex parte communication. Gruba and Barsanti additionally assert the Commission's decision to limit the scope of the complaint—thus dismissing Gruba and Barsanti's claim regarding a third party's ability to use NorthWestern's poles to house higher efficiency streetlights—was a violation of their due process rights. The District Court concluded the Commission has the power to regulate the mode and manner of all investigations and hearings under § 69-3-103(2)(c), MCA. Although the Commission provided Gruba and Barsanti with sufficient time to brief the matter, the Commission nonetheless deemed several issues either improperly before it or insufficiently clear. The Commission's decision to limit the scope of the complaint to a single issue, involving litigation that has transpired over a decade, is well within its

11

authority under § 69-3-103(2)(c), MCA. The District Court did not err in concluding Gruba and Barsanti's due process rights were not violated.

¶16 The District Court correctly concluded that final order 7084aa was lawful and complied with the Montana Administrative Procedure Act. The Commission's findings of fact were supported by substantial evidence, it did not misapprehend the effect of the evidence, and there is no evidence that a mistake was made. Finally, the Commission's determination, affirmed by the District Court, that the ownership charge was neither unjustly discriminatory nor preferential was not unlawful or unreasonable.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER